## NEW YORK COMMON PLEAS.

Anson Bangs agt. The Blue Ridge Railroad Company, John L. Patterson *et al.*

Where it is alleged in the complaint that one of the defendants, a railroad company, issued certain bonds for the sum of $1,000 each, with interest coupons attached, and default having been made in not paying the coupons according to the condition of said bonds, by reason of which the bonds had become due and payable; and that the plaintiff owns a certain number of said bonds and coupons which have long since become due and payable, shows an existing obligation to pay money, a default in its payment and a right of action for its recovery.

And where it was alleged in the complaint that P., one of the individual defendants, by his written agreement, promised to pay the debts of the said company, in which plaintiffs' claim was included, such promise inured to the benefit of the creditors.

The promise of P. to pay the debts of the company, taken in connection with the allegation that he (with the other defendants) fraudulently conspired to, and did, misappropriate the funds that were specifically charged with the payment thereof, raises such a presumption of liability on his part as to justify the court in putting him to his defense and establishes the plaintiff's claims to equitable relief. Joint demurrer to complaint overruled.

*General Term, May* 1873.

W. W. Macfarland, *for appellant.*

This action is one in the nature of a bill in equity, and the relief which is sought would have been, under the former practice, the subject of a bill in chancery.

The action has for its object to subject a certain amount of bonds and scrip, so called, of the state of South Carolina,

to a supposed lien, which the plaintiff imagines that he possesses. The means by which the plaintiff seeks to accomplish this result are quite novel and unknown to any system of practice, either at law or in equity; but under our system of pleading, this cannot be said to be very material; for if the pleader has stated in any form, however inartificial and crude, facts enough to entitle him to some kind of judicial relief, it is perhaps the duty of the court to overrule a general demurrer in order that it may give the plaintiff whatever kind of relief upon the whole case he appears to be entitled to.

This demurrer, therefore, is not directed against any mere matters of form, but at the very marrow and substance of the cause of action, the defendants intending to show that the plaintiff has no interest whatever in the bonds or scrip which he seeks by this means to appropriate. In order to show this, it is necessary to look with some care into the allegations of the complaint.

In doing this, we find that the plaintiff is the owner of a certain number of bonds of the Blue Ridge Railroad Company, the payment of which is secured by the usual trust deed or mortgage. The plaintiff says he is informed and believes that he owns of these bonds seventy-six. However this may be, he alleges himself to be a creditor of this corporation, whose debt is represented by a bond, the payment of which is secured by a mortgage on the property of the company.

In the second place, the plaintiff says that the legislature of South Carolina, on the 15th day of September, 1868, passed an act. By the first section of this act, after reciting certain previous legislation, it is provided that the guarantee of the state shall be indorsed upon the contracts of the company to the extent of a million of dollars, "provided that so much of said issue as may be necessary, not exceeding $300,000, shall be applied to the redemption of the present bonded debt of the said company;" and by the second section of the same act, the state undertakes to guarantee the bonds of the company to the additional amount of $3,000,000. In connection

with this guarantee, and in the same section, there is a very important proviso: "And that as soon as the comptroller-general shall have made any such indorsement on any such contract, the whole estate, property and funds in the states of South Carolina, Georgia, North Carolina and Tennessee, which the said company may then possess, or shall afterward acquire, shall thenceforth stand pledged and mortgaged to the state, without any further act or deed on the part of the company, for the faithful and punctual performance on the part of said company of such contract, in priority and preference of any other debt which the said company may hereafter create or incur. And further provided, that the said bonds, or any part thereof, shall not be used, unless upon the express condition that upon application to the congress of the United States, or to private capitalists, the amount of $3,000,000 in currency, or so much of that sum as may be necessary, shall be furnished in exchange or upon the security of said bonds."

In respect to this act these things are to be observed:

*First.* The loan of the state's credit to this corporation, except to the extent that the public generally might be benefited by the construction of its line of railroad, was a mere gratuity. The state was under no obligation of any kind, legal or equitable, to this corporation or its creditors.

*Second.* That the guarantee, provided for by the first section of the act, was intended to carry into execution an old promise of the state to aid the company to that extent, made as long ago as 1854, and to relieve the company from some onerous obligations assumed in connection with that promise, the performance of which had become substantially impracticable.

*Third.* That the state expressly stipulates for a statutory lien upon the entire property of the company, in the nature of a mortgage lien, as an indemnity against the liability so assumed.

*Fourth.* That to the end of making this lien a better indemnity and enhancing its value, it is provided that so much of

the said issue (doubtless meaning bonds to be issued by the company, although the idea is very awkwardly expressed), as might be necessary, not exceeding $300,000, should be applied to the redemption of the present bonded debt of the company. The complaint then goes on to allege the passage of a subsequent statute by the legislature of South Carolina, wherein it is recited to be advisable to call in and cancel the bonds of this railroad company theretofore issued and indorsed by the state. By the second section the treasurer of the state is authorized, upon the surrender of the $4,000,000 of bonds as aforesaid, to issue to the company $1,800,000 of treasury certificates of indebtedness, styled revenue bond scrip, and the treasurer is authorized to deliver such scrip proportionately as bonds are delivered. And by the third section the treasurer is directed to have printed or engraved on steel the scrip referred to. By the seventh section it is provided that whenever the whole number of the said guaranteed bonds shall have been delivered to the treasurer and canceled, as required by the provisions of this act, the lien of the state upon the property of the railroad company should be extinguished, and that the lien should be extinguished proportionally as from time to time bonds might be surrendered. .

It is to be observed that the company is in nowise restricted in respect to the disposition it may make of this scrip; it is an absolute donation on the part of the state, made upon the condition of surrendering bonds indorsed by the state, and it becomes the absolute property of the company, available for any legitimate use.

After reciting this law, the pleader proceeds with various confused, conflicting and scarcely intelligible allegations about one thing and another, entirely irrelevant to the case, alleging, among other things, that the scrip is unconstitutional; that no part of the original $4,000,000 of bonds was applied as they should have been to the satisfaction of the plaintiff's debt; that the American Bank Note Company is printing this scrip; that the defendants threaten to use the scrip as

cash without paying the bonded debt of the company, contrary to the plaintiff's rights; that the issue of the scrip increases the liability and indebtedness of the company, "without realizing anything for the said company, and without realizing anything wherewith to pay the bonded debt, floating debt and interest, the claims of the plaintiff included, and will cause an over issue of said obligations." Of course, no one can be expected to understand what this means, nor is it at all necessary that one should; for if the plaintiff fails to show that he has a specific lien on the bonds or scrip, he cannot maintain his action on any other ground stated. The relief prayed for need not be particularly noticed, because, for reasons before stated, it is of little moment whether it be right or wrong.

I. It is, of course, very plain that this action is brought upon the notion of enforcing a trust; the theory of it being that the company became a trustee for the plaintiff, among others, of so many of the $4,000,000 of bonds as might be necessary to pay his debt, and that they could not be diverted to any use inconsistent with the execution of this trust. And the court at special term went even further than the plaintiff goes in his complaint, and held that the scrip issued to the company was to be regarded as having been substituted for the bonds, and held subject to this trust.

II. But it is submitted that this notion is entirely erroneous. This was a transaction evidenced by a public statute between the state and one of its corporations alone. The state, for its own purposes, saw fit to extend certain aid to the corporation upon certain terms specified, and likewise, for its own purposes, it gave to the corporation certain directions in the premises. The state owed no debt to the corporation; it was under no obligation to the creditors of the corporation, and the direction to the corporation to satisfy its old bonded debt out of the proceeds to the aid so to be given, was simply for the benefit of the state's security and nothing else. These bonded debt creditors, a shifting class, changing

from day to day, were not parties contracted with through the instrumentality of this corporation as their agent; nor did the state intend to constitute it a trustee for them in the sense in which that term is ordinarily used in jurisprudence. The bonded debt was referred to as a thing contracted about as between the state and the corporation, a thing which it was deemed desirable to get rid of in order that the state might have a clear and first lien. It is true that the state could not as against *bona fide* holders of these railroad bonds, indorsed by the state, if they had been put in circulation, have repudiated its obligation as guarantor without the grossest bad faith; but down to this point it was entirely proper that the state should make any change in its relation with the railroad company in respect to these bonds that it saw fit.

III. There are certain considerations which make it very clear that it was no part of the intention involved in this legislation to benefit these bondholders individually or as a class. Even in the original act the subject of these bonds is not referred to except in connection with the issue of the first million of obligations; and no scheme is devised or special directions given for the mode of applying the bonds or the proceeds of the bonds to the satisfaction of the mortgage bonds in question. Moreover the bonds were not to be sold at all or used for any purpose unless they could be sold at a certain rate and made to realize a certain price; and where they were sold the proceeds were left absolutely at the disposition of the company, which was directed simply as to the disposition that was to be made of a certain portion of the proceeds. It is doubtless true that the state, if it had deemed it proper to do so, could have enforced the application which it had directed the company to make; but it is equally true that it might change the previous direction and require the corporation to make an entirely different application of the proceeds.

It is not to be forgotten that the state is dealing in its political capacity with a public enterprise; and it is not to be

supposed that it intended to come under any obligation to a third person that would give such third person any legal or equitable right to interfere as between the state and this corporation in any of their dealings with each other; but laying aside, for the sake of the argument, the political and sovereign character of the state, and considering the transaction as one not lying in public law, but resting in contract between two private corporations, we shall then, by following certain well settled general principles, find ourselves led to the same result.

1. If two persons, for a valuable consideration as between themselves, contract to do some act for the benefit of a third person, who is a mere stranger to the consideration, he cannot enforce the covenant as against the two, although each one might enforce it as against the other (*Story's Equity*, § 973, *and notes*, § 1045, *and particularly* § 1196; *Kelly* agt. *Roberts*, 40 *N. Y.*, 438; *Hollaway* agt. *Headington*, 8 *Simons*, 325; *Scales* agt. *Maude*, 6 *De Gex, McNorton & Gordon*, 50; *Colyear* agt. *The Countess of Mulgrave*, 2 *Keen*, 98; *Sutton* agt. *Chetwind*, 3 *Merivale*, 252: *Lane* agt. *Husband*, 14 *Simons*, 660; *Perry on Trusts*, § 96, *and cases cited*).

2. It is to be carefully borne in mind that there is not the least analogy between the case at bar and the class of cases where a debtor has assigned to the third person as trustee his property generally, or any particular property, for payment of his debts. There is no doubt that in such a case the creditors, upon notice and acceptance of the provision made, might enforce the trust which as to them would then become irrevocable (*Cumberland* agt. *Codington*, 3 *Johnson Ch.*, 261; *Shepherd* agt. *McEvers*, 4 *id.*, 135; *Nicoll* agt. *Mumford*, *id.*, 528).

But even in the case of the delivery of property by a debtor with instructions to pay creditors, these instructions may be countermanded and revoked at any time before notice to and acceptance by the creditor (*Story's Equity*, § 1045;

*id.*, § 1196, *particularly; Linton* agt. *Hyde*, 2 *Madd.*, 94; *Priddy* agt. *Rose*, 3 *Mew.*, 102; *Dearle* agt. *Hall*, 3 *Russ.*, 1; *Leveredge* agt. *Cooper*, 3 *id.*, 30; *Page* agt. *Broom*, 4 *id.*, 6; *Eanard* agt. *Lord Lauderdale*, 3 *Sim.*, 1; *Leman* agt. *Whitely*, 4 *Russ.*, 427).

And in this case there was no action whatever on the part of creditors; and so far as they are concerned, the subsequent legislation, in which their names were left out, might as well have been had one minute after the first act as one year.

3. In this case the bondholders are the merest strangers possible to this transaction, and to any consideration upon which it is based. They part with nothing, they do nothing, they are merely passive; and so far as they are mentioned, as has been observed already, they are mentioned in connection with the interest of third parties alone, and are dealt with merely as the chessmen by two players.

It is an elementary principle, that may be usefully referred to here, that a mere gratuitous gift will never be enforced (*Story's Equity*, § 973).

And if this was anything, it was a mere intended gift on the part of the state to the corporation, of which in a certain event the bondholders might have become to a certain extent the beneficiaries. This intention the state revoked by a subsequent act, as it might beyond any doubt lawfully do. Having done this, an end was at once put to all relations, direct or indirect, of the bondholders in question with transactions between the corporation and the state. In the subsequent act no mention whatever is made of the bondholders. The state has abandoned its idea of requiring the corporation to appropriate anything, or any portion of anything, it may see fit to give it to the payment of these mortgage debts. It has ceased to be of any direct interest to the state whether these debts are paid or not, inasmuch as the state has abandoned its lien upon the property of the corporation. The corporation is simply required to return these $4,000,000 bonds; and thereupon the state gives the corporation so much

Bangs agt. Blue Ridge Railroad Company.

circulating scrip, in the same way as it might give the corporation so much land or anything else, and it gives it unconditionally. It is charged with no trust and no duty, the corporation being at liberty to make any lawful use that it pleases of the property thus given by the state. To neither of these transactions are these bondholders in any wise a party; nor have they, it is submitted, any right to question the propriety or the validity of what has been done. It is all *res inter alios acta*, and no right of action on the part of the corporation can exist in the premises.

IV. It is submitted in conclusion, therefore, that this action, based as it is upon some supposed right in these bondholders, growing out of the legislation in question, cannot be maintained, and the demurrer should be sustained.

The judge below, whose opinions are always entitled to be treated with very great respect, was misled by mistaking certain doctrines applicable to the forms of action, and which are of no consequence under the Code for the real principles by which the existence of the cause of action must be determined.

D. M. Porter, *for respondent.*

The state of South Carolina granted the Blue Ridge R. R. Co. the right to issue $4,000,000 of bonds, and the state gave its indorsement on all of the bonds upon the express condition and trust "that so much of the issue as may be necessary, not exceeding $300,000, shall be applied to the redemption of the present bonded debt of the said company."

The plaintiff is the owner and holder of about $150,000 of the last named bonded debt, including overdue coupons thereon. In other words, the state made a direct gift to the plaintiff through the railroad. Afterward the railroad company, Patterson, Cameron and Steers entered into two agreements, in each of which they placed the bonds in trust to redeem the class of bonds owned by the plaintiff.

After that the law purporting to authorize the surrender of $4,000,000 of bonds and to create the scrip purports to have been passed. The demurrants entered into a conspiracy to, and did, misappropriate *all of* the bonds and scrip. All of which bonds and scrip were and are pledged to pay *the plaintiff's bonds*, and the demurrants are now chargeable with that trust, and they took the same with knowledge of said trust and of the plaintiff's claim thereto.

It will not be disputed but that the plaintiff can recover against the railroad company, and has a good cause of action against it.

The demurrant, Patterson, for a valuable consideration assumed and agreed to pay the plaintiff his bonds and coupons and claim.

The demurrer is a joint one of both appellants.

I. The grant of the state credit, a part to the company and a part to the then present bondholders through the company, made it an express gift to the plaintiff.

And the demurrants hold the bonds and scrip as trustees, inasmuch as the act and the contract in effect so declare (*Tiffany & Bullard on Trusts*, 105).

II. The act of 1872 names the act of 1868 in express terms, and states which bonds ($4,000,000) are liable for the debts of said railroad companies. No language can create a more express trust (*Story's Equity Jur.*, § 1039, 1041 to 1058). Patterson knew all of the facts and became bound by the trust (5 *Abb. Digest*, 278; *Tiffany & B. on Trusts*, 202; *Story's Eq.*, §§ 972, 1212 *and* 1196; *Manuscript opinion by judge J. F.* DALY *in this case*).

III. The plaintiff is entitled to have the bonds restored in place of the scrip or their proceeds (*Colt* agt. *Lasnier*, 9 *Cowen*, 320). The plaintiff can maintain this action, he may enforce the trust or grant under the statute and upon the express promise to pay, either at law or in equity (*Dingeldein* agt. *Third Avenue Railroad*, 37 *N. Y.*, 575; *Barker* agt. *Bradley*, 42 *id.*, 316; *Prentice* agt. *Wilkinson*, 5 *Abb.*, *N. S.*,

49 *Com. Pleas ; Burr* agt. *Beers,* 24 *N. Y.* 178 ; *Lawrence* agt. *Fox,* 20 *id.,* 268 ; *judge* Daly's *opinion, MS.* Demurrants are liable, whether the party paying the consideration was liable originally or not. (*Becker* agt. *Torrance,* 31 *N. Y.,* 631 ; *Secor* agt. *Lord,* 3 *Keyes,* 525). Good upon contract alone (*Connor* agt. *Williams,* 2 *Robt.,* 46 ; *Auburn C. Bank* agt. *Leonard,* 40 *Barb.,* 119). Is good upon transfer of personal property (*Seaman* agt. *Hasbrouck,* 35 *Barb.,* 151 ; *Thorp* agt. *Keokuk Coal Co.,* 47 *id., affirmed court app. January,* 1872). Demurrants are liable in equity (*Dingeldein* agt. *Third Avenue Railroad Co., supra ; Van Schaick* agt. *Third Avenue Railroad,* 49 *Barb.,* 409 ; *affirmed,* 38 *N. Y.,* 346). They would be liable if deed containing promise was intended as a mortgage (*Ricard* agt. *Sanderson,* 41 *N. Y.,* 179). And in all cases if a trust is created in the contract, as in this case (*Garnsey* agt. *Rogers,* 47 *N. Y.,* 233).

IV. The law creating the scrip is void under both the constitution of the United States and of the state of South Carolina, and has been so declared in South Carolina (*Manuscript opinion by judge* Willard). This gives the plaintiff a right to have his portion of the $4,000,000 bonds or their proceeds restored.

V. The plaintiff's right to recover of the railroad is unquestioned, and the demurrer being joint was properly overruled (*Stuyvesant* agt. *The Mayor,* 11 *Paige,* 415 ; *People* agt. *Mayor,* 28 *Barb.,* 240).

VI. The order overruling the demurrer should be affirmed with costs.

*By the Court,* Larremore, *J.*—The truth of the facts set forth in the complaint being admitted by the demurrer, the only question to be decided is whether a cause of action is clearly established.

It is alleged that the Blue Ridge Railroad, of South Carolina, on April 7, 1854, issued certain bonds for the sum of $1,000 each (with interest coupons attached), payable Novem-

ber 1, 1883, " or until default made in the payment of the coupons or any of them, when said bonds are to become due and payable in pursuance of an instrument executed simultaneously therewith, and to be read as a part of said bond, which default has occurred." That plaintiff owns seventy-six of said bonds and 1,446 of said coupons, which latter have long since accrued and are unpaid.

This statement shows an existing obligation to pay money, a default in its payment and a right of action for its recovery.

It is also alleged that, as additional security for the payment of said indebtedness (which constituted a part of the bonded debt of said company), the legislature of South Carolina, by an act passed September 15, 1868, authorized the issue by said company of contracts or bonds to the amount of $4,000,000, for which the faith and funds of that state were pledged, by which act it was provided that so much of the first $1,000,000 of said issue as might be necessary not exceeding $300,000, should be applied to the redemption of the present bonded debt of the said company; that such bonds were issued in accordance with said act, and that all persons receiving the same took and received them under the obligation, limitation and trust created by said act, and with full knowledge thereof.

It is then averred that the defendants, Cameron, Steers and Patterson, entered into a written agreement for the purpose of buying the stock of the Blue Ridge Railroad Company, and therein agreed that the debts of said company (in which plaintiff's demand was included) should be paid by them out of the proceeds of the said bonds and the assets of said company; that the time to perform said contract has elapsed, and said defendants have failed in its performance.

Plaintiff then alleges that said defendants and said company confederated and conspired together to get control of the said $4,000,000 bonds, and, with intent to cheat, delay and defraud the creditors of said company, did pledge, sell, transfer and convey the whole thereof, contrary to the provisions of said

act, for their own purpose and benefit, and without paying the bonded debt of said company or any part thereof, and refused and still refuse to appropriate any part of the proceeds of said bonds to pay plaintiff, although said defendants have realized from the sale of said bonds over $700,000 in cash, and that they have misappropriated the same; that by a recent act of the legislature of said state of South Carolina, passed March 2, 1872, it was provided that upon the surrender of said $4,000,000 bonds, or of any of them, revenue scrip bonds would be issued by said state, which latter have been issued to said defendants, who hold and are disposing of the same in fraud of plaintiff's rights.

This demurrer is interposed in behalf of the defendants, The Blue Ridge Railroad Company and John J. Patterson. A money judgment is sought against each. That the action is well brought against the company will scarcely be questioned. Patterson, by his written agreement, promised to pay the debts of said company, in which (as is alleged) plaintiff's claim was included; such promise inured to the benefit of the creditors (*Lawrence* agt. *Fox*, 20 N. Y., 268; *Burr* agt. *Beers*, 24 id., 178; *Dingeldein* agt. *Third Avenue R. R. Co.*, 37 id., 575; *Barker* agt. *Bradley*, 42 id., 316; *Secor* agt. *Lord*, 3 Keys, 525).

It is unnecessary to enter into an extended examination of the grounds upon which plaintiff relies for equitable relief. The promise of Patterson to pay the debts of the company, taken in connection with the allegation that he (with the other defendants) fraudulently conspired to and did misappropriate the funds that were specifically charged with the payment thereof, raise such a presumption of liability on his part as to justify the court in putting him to his defense.

I think the demurrer should be overruled, and the order appealed from affirmed.