LAWRENCE *v.* FOX.

An action lies on a promise made by the defendant upon valid consideration to a third person for the benefit of the plaintiff, although the plaintiff was not privy to the consideration.

Such promise is to be deemed made to the plaintiff, if adopted by him though he was not a party nor cognizant of it when made. Per JOHNSON, Ch. J., and DENIO, J.

So *held*, where A loaned money to the defendant upon his promise to pay it to the plaintiff, to whom A stated that he owed and had promised to pay the like sum; there being no other evidence of the fact than such declaration.

APPEAL from the Superior Court of the city of Buffalo On the trial before Mr. Justice MASTEN, it appeared by the evi

Lawrence *v.* Fox.

dence of a bystander, that one Holly, in November, 1857, at the request of the defendant, loaned and advanced to him $300, stating at the time that he owed that sum to the plaintiff for money borrowed of him, and had agreed to pay it to him the then next day; that the defendant in consideration thereof, at the time of receiving the money, promised to pay it to the plaintiff the then next day. Upon this state of facts the defendant moved for a nonsuit, upon three several grounds, viz.: That there was no proof tending to show that Holly was indebted to the plaintiff; that the agreement by the defendant with Holly to pay the plaintiff was void for want of consideration, and that there was no privity between the plaintiff and defendant. The court overruled the motion, and the counsel for the defendant excepted. The cause was then submitted to the jury, and they found a verdict for the plaintiff for the amount of the loan and interest, $344.66, upon which judgment was entered; from which the defendant appealed to the Superior Court, at general term, where the judgment was affirmed, and the defendant appealed to this court. The cause was submitted on printed arguments.

*I. S. Torrance*, for the appellant.

*E. P. Chapin*, for the plaintiff.

H. GRAY, J. The first objection raised on the trial amounts to this: That the evidence of the person present, who heard the declarations of Holly giving directions as to the payment of the money he was then advancing to the defendant, was mere hearsay and therefore not competent. Had the plaintiff sued Holly for this sum of money no objection to the competency of this evidence would have been thought of; and if the defendant had performed his promise by paying the sum loaned to him to the plaintiff, and Holly had afterwards sued him for its recovery, and this evidence had been offered by the defendant, it would doubtless have been received without an objection from any source. All the defendant had the right to

demand in this case was evidence which, as between Holly and the plaintiff, was competent to establish the relation between them of debtor and creditor. For that purpose the evidence was clearly competent; it covered the whole ground and warranted the verdict of the jury. 'But it is claimed that notwithstanding this promise was established by competent evidence, it was void for the want of consideration.' It is now more than a quarter of a century since it was settled by the Supreme. Court of this State—in an able and pains-taking opinion by the late Chief Justice SAVAGE, in which the authorities were fully examined and carefully analysed—that a promise in all material respects like the one under consideration was valid; and the judgment of that court was unanimously affirmed by the Court for the Correction of Errors. (*Farley* v. *Cleaveland*, 4 *Cow.*, 432; *same case in error*, 9 *id.*, 639.) In that case one Moon owed Farley and sold to Cleaveland a quantity of hay, in consideration of which Cleaveland promised to pay Moon's debt to Farley; and the decision in favor of Farley's right to recover was placed upon the ground that the hay received by Cleaveland from Moon was a valid consideration for Cleaveland's promise to pay Farley, and that the subsisting liability of Moon to pay Farley was no objection to the recovery. The fact that the money advanced by Holly to the defendant was a loan to him for a day, and that it thereby became the property of the defendant, seemed to impress the defendant's counsel with the idea that because the defendant's promise was not a trust fund placed by the plaintiff in the defendant's hands, out of which he was to realize money as from the sale of a chattel or the collection of a debt, the promise although made for the benefit of the plaintiff could not enure to his benefit. The hay which Cleaveland delivered to Moon was not to be paid to Farley, but the debt incurred by Cleaveland for the purchase of the hay, like the debt incurred by the defendant for money borrowed, was what was to be paid. That case has been often referred to by the courts of this State, and has never been doubted as sound authority for the principle upheld by it. (*Barker* v. *Bucklin*, 2 *Denio*, 45; *Hudson Canal*

*Company* v. *The Westchester Bank*, 4 *id.*, 97.) It puts to rest the objection that the defendant's promise was void for want of consideration. The report of that case shows that the promise was not only made to Moon but to the plaintiff Farley. In this case the promise was made to Holly and not expressly to the plaintiff; and this difference between the two cases presents the question, raised by the defendant's objection, as to the want of privity between the plaintiff and defendant. As early as 1806 it was announced by the Supreme Court of this State, upon what was then regarded as the settled law of England, "That where one person makes a promise to another for the benefit of a third person, that third person may maintain an action upon it." *Schermerhorn* v. *Vanderheyden* (1 *John. R.*, 140), has often been re-asserted by our courts and never departed from. The case of *Seaman* v. *White* has occasionally been referred to (but not by the courts) not only as having some bearing upon the question now under consideration, but as involving in doubt the soundness of the proposition stated in *Schermerhorn* v. *Vanderheyden.* In that case one Hill, on the 17th of August, 1835, made his note and procured it to be indorsed by Seaman and discounted by the Phœnix Bank. Before the note matured and while it was owned by the Phœnix Bank, Hill placed in the hands of the defendant, Whitney, his draft accepted by a third party, which the defendant indorsed, and on the 7th of October, 1835, got discounted and placed the avails in the hands of an agent with which to take up Hill's note; the note became due, Whitney withdrew the avails of. the draft from the hands of his agent and appropriated it to a debt due him from Hill, and Seaman paid the note indorsed by him and brought his suit against Whitney. Upon this state of facts appearing, it was held that Seaman could not recover: first, for the reason that no promise had been made by Whitney to pay, and second, if a promise could be implied from the facts that Hill's accepted draft, with which to raise the means to pay the note, had been placed by Hill in the hands of Whitney, the promise would not be to Seaman, but to the Phœnix Bank who then owned the note; although, in the course of

the opinion of the court, it was stated that, in all cases the principle of which was sought to be applied to that case, the fund had been appropriated by an express undertaking of the defendant with the creditor. But before concluding the opinion of the court in this case, the learned judge who delivered it conceded that an undertaking to pay the creditor may be implied from an arrangement to that effect between the defendant and the debtor. This question was subsequently, and in a case quite recent, again the subject of consideration by the Supreme Court, when it was held, that in declaring upon a promise, made to the debtor by a third party to pay the creditor of the debtor, founded upon a consideration advanced by the debtor, it was unnecessary to aver a promise to the creditor; for the reason that upon proof of a promise made to the debtor to pay the creditor, a promise to the creditor would be implied. And in support of this proposition, in no respect distinguishable from the one now under consideration, the case of *Schermerhorn* v. *Vanderheyden*, with many intermediate cases in our courts, were cited, in which the doctrine of that case was not only approved but affirmed. (*The Delaware and Hudson Canal Company* v. *The Westchester County Bank*, 4 *Denio*, 97.) The same principle is adjudged in several cases in Massachusetts. I will refer to but few of them. (*Arnold* v. *Lyman*, 17 *Mass.*, 400; *Hall* v. *Marston, id.*, 575; *Brewer* v. *Dyer*, 7 *Cush.*, 337, 340.) In *Hall* v. *Marston* the court say: "It seems to have been well settled that if A promises B for a valuable consideration to pay C, the latter may maintain assumpsit for the money;" and in *Brewer* v. *Dyer*, the recovery was upheld, as the court said, "upon the principle of law *long recognized and clearly established*, that when one person, for a valuable consideration, engages with another, by a simple contract, to do some act for the benefit of a third, the latter, who would enjoy the benefit of the act, may maintain an action for the breach of such engagement; that it does not rest upon the ground of any actual or supposed relationship between the parties as some of the earlier cases would seem to indicate, but upon the broader and more satisfactory basis, that the law operating on the act

of the parties creates the duty, establishes a privity, and implies the promise and obligation on which the action is founded." There is a more recent case decided by the same court, to which the defendant has referred and claims that it at least impairs the force of the former cases as authority. It is the case of *Mellen* v. *Whipple* (1 *Gray*, 317). In that case one Rollins made his note for $500, payable to Ellis and Mayo, or order, and to secure its payment mortgaged to the payees a certain lot of ground, and then sold and conveyed the mortgaged premises to the defendant, by deed in which it was stated that the " granted premises were subject to a mortgage for $500, which mortgage, with the note for which it was given, the said Whipple is to assume and cancel." The deed thus made was accepted by Whipple, the mortgage was afterwards duly assigned, and the note indorsed by Ellis and Mayo to the plaintiff's intestate. After Whipple received the deed he paid to the mortgagees and their assigns the interest upon the mortgage and note for a time, and upon refusing to continue his payments was sued by the plaintiff as administratrix of the assignee of the mortgage and note. The court held that the stipulation in the deed that Whipple should pay the mortgage and note was a matter exclusively between the two parties to the deed; that the sale by Rollins of the equity of redemption did not lessen the plaintiff's security, and that as nothing had been put into the defendant's hands for the purpose of meeting the plaintiff's claim on Rollins, there was no consideration to support an express promise, much less an implied one, that Whipple should pay Mellen the amount of the note. This is all that was decided in that case, and the substance of the reasons assigned for the decision; and whether the case was rightly disposed of or not, it has not in its facts any analogy to the case before us, nor do the reasons assigned for the decision bear in any degree upon the question we are now considering. But it is urged that because the defendant was not in any sense a trustee of the property of Holly for the benefit of the plaintiff, the law will not imply a promise. I agree that many of the cases where a promise was implied were cases of trusts,

created for the benefit of the promiser. The case of *Felton* v. *Dickinson* (10 *Mass.*, 189, 190), and others that might be cited, are of that class; but concede them all to have been cases of trusts, and it proves nothing against the application of the rule to this case. The duty of the trustee to pay the *cestuis que trust*, according to the terms of the trust, implies his promise to the latter to do so. In this case the defendant, upon ample consideration received from Holly, promised Holly to pay his debt to the plaintiff; the consideration received and the promise to Holly made it as plainly his duty to pay the plaintiff as if the money had been remitted to him for that purpose, and as well implied a promise to do so as if he had been made a trustee of property *to be converted into* cash with which to pay. The fact that a breach of the duty imposed in the one case may be visited, and justly, with more serious consequences than in the other, by no means disproves the payment to be a duty in both. The principle illustrated by the example so frequently quoted (which concisely states the case in hand) "that a promise made to one for the benefit of another, he for whose benefit it is made may bring an action for its breach," has been applied to trust cases, not because it was exclusively applicable to those cases, but because it was a principle of law, and as such applicable to those cases. It was also insisted that Holly could have discharged the defendant from his promise, though it was intended by both parties for the benefit of the plaintiff, and therefore the plaintiff was not entitled to maintain this suit for the recovery of a demand over which he had no control. It is enough that the plaintiff did not release the defendant from his promise, and whether he could or not is a question not now necessarily involved; but if it was, I think it would be found difficult to maintain the right of Holly to discharge a judgment recovered by the plaintiff upon confession or otherwise, for the breach of the defendant's promise; and if he could not, how could he discharge the suit before judgment, or the promise before suit, made as it was for the plaintiff's benefit and in accordance with legal presumption accepted by him (*Berley* v. *Taylor*, 5 *Hill*, 577–584, *et seq.*), until his dissent was

shown. ⟨ The cases cited, and especially that of *Farley* v. *Cleave-land*, establish the validity of a parol promise; it stands then upon the footing of a written one. Suppose the defendant had given his note in which, for value received of Holly, he had promised to pay the plaintiff and the plaintiff had accepted the promise, retaining Holly's liability. Very clearly Holly could not have discharged that promise, be the right to release the defendant as it may. No one can doubt that he owes the sum of money demanded of him, or that in accordance with his promise it was his duty to have paid it to the plaintiff; nor can it be doubted that whatever may be the diversity of opinion elsewhere, the adjudications in this State, from a very early period, approved by experience, have established the defendant's liability; if, therefore, it could be shown that a more strict and technically accurate application of the rules applied, would lead to a different result (which I by no means concede), the effort should not be made in the face of manifest justice.

The judgment should be affirmed.

JOHNSON, Ch. J., DENIO, SELDEN, ALLEN and STRONG, Js., concurred. JOHNSON, Ch. J., and DENIO, J., were of opinion that the promise was to be regarded as made to the plaintiff through the medium of his agent, whose action he could ratify when it came to his knowledge, though taken without his being privy thereto.

COMSTOCK, J. (Dissenting.) The plaintiff had nothing to do with the promise on which he brought this action. It was not made to him, nor did the consideration proceed from him. If he can maintain the suit, it is because an anomaly has found its way into the law on this subject. In general, there must be privity of contract. The party who sues upon a promise must be the promisee, or he must have some legal interest in the undertaking. In this case, it is plain that Holly, who loaned the money to the defendant, and to whom the promise in question was made, could at any time have claimed that it should be performed to himself personally. He had lent the

money to the defendant, and at the same time directed the latter to pay the sum to the plaintiff. This direction he could countermand, and if he had done so, manifestly the defendant's promise to pay according to the direction would have ceased to exist. The plaintiff would receive a benefit by a complete execution of the arrangement, but the arrangement itself was between other parties, and was under their exclusive control. If the defendant had paid the money to Holly, his debt would have been discharged thereby. So Holly might have released the demand or assigned it to another person, or the parties might have annulled the promise now in question, and designated some other creditor of Holly as the party to whom the money should be paid. It has never been claimed, that in a case thus situated, the right of a third person to sue upon the promise rested on any sound principle of law. We are to inquire whether the rule has been so established by positive authority.

The cases which have sometimes been supposed to have a bearing on this question, are quite numerous. In some of them, the dicta of judges, delivered upon very slight consideration, have been referred to as the decisions of the courts. Thus, in *Schermerhorn* v. *Vanderheyden* (1 *John.*, 140), the court is reported as saying, "We are of opinion, that where one person makes a promise to another, for the benefit of a third person, that third person may maintain an action on such promise." This remark was made on the authority of *Dutton* v. *Poole* (*Vent.*, 318, 332), decided in England nearly two hundred years ago. It was, however, but a mere remark, as the case was determined against the plaintiff on another ground. Yet this decision has often been referred to as authority for similar observations in later cases.

In another class of cases, which have been sometimes supposed to favor the doctrine, the promise was made to the person who brought the suit, while the consideration proceeded from another; the question considered being, whether the promise was void by the statute of frauds. Thus, in *Gold* v. *Phillips* (10 *Johns.*, 412), one Wood was indebted to the

plaintiffs for services as attorneys and counsel, and he conveyed a farm to the defendants, who, as part of the consideration, were to pay that debt. Accordingly, the defendants wrote to the plaintiffs, informing them that an arrangement had been made by which they were to pay the demand. The defence was, that the promise was void within the statute, because, although in writing, it did not express the consideration. But the action was sustained, on the ground that the undertaking was original and not collateral. So in the case of *Farley* v. *Cleaveland* (4 *Cow.*, 432; 9 *id.*, 639), the facts proved or offered to be proved were, that the plaintiff held a note against one Moon; that Moon sold hay to the defendant, who in consideration of that sale promised the plaintiff by parol to pay the note. The only question was, whether the statute of frauds applied to the case. It was held by the Supreme Court, and afterwards by the Court of Errors, that it did not. Such is also precisely the doctrine of *Ellwood* v. *Monk* (5 *Wend.*, 235), where it was held, that a plea of the statute of frauds, to a count upon a promise of the defendant to the plaintiff, to pay the latter a debt owing to him by another person, the promise being founded on a sale of property to the defendant by the other person, was bad.

The cases mentioned, and others of a like character, were referred to by Mr. Justice JEWETT, in *Barker* v. *Bucklin* (2 *Denio*, 45). In that case, the learned justice considered at some length the question now before us. The authorities referred to were mainly those which I have cited, and others, upon the statute of frauds. The case decided nothing on the present subject, because it was determined against the plaintiff on a ground not involved in this discussion. The doctrine was certainly advanced which the plaintiff now contends for, but among all the decisions which were cited, I do not think there is one standing directly upon it. The case of *Arnold* v. *Lyman* (17 *Mass.*, 400), might perhaps be regarded as an exception to this remark, if a different interpretation had not been given to that decision in the Supreme Court of the same State where it was pronounced. In the recent case of *Mellen, Ad-*

*ministratrix,* v. *Whipple* (1 *Gray,* 317), that decision is under-
stood as belonging to a class where the defendant has in his
hands a trust fund, which was the foundation of the duty or
promise in which the suit is brought.

The cases in which some trust was involved are also fre-
quently referred to as authority for the doctrine now in ques-
tion, but they do not sustain it. If A delivers money or
property to B, which the latter accepts upon a trust for the
benefit of C, the latter can enforce the trust by an appropriate
action for that purpose. (*Berly* v. *Taylor,* 5 *Hill,* 577.) If the
trust be of money, I think the beneficiary may assent to it and
bring the action for money had and received to his use. If it
be of something else than money, the trustee must account for
it according to the terms of the trust, and upon principles of
equity. There is some authority even for saying that an ex-
press promise founded on the possession of a trust fund may
be enforced by an action at law in the name of the beneficiary,
although it was made to the creator of the trust. Thus, in
*Comyn's Digest* (*Action on the case upon Assumpsit, B.* 15), it is
laid down that if a man promise a pig of lead to A, and his
executor give lead to make a pig to B, who assumes to deliver
it to A, an assumpsit lies by A against him. The case of
*The Delaware and Hudson Canal Company* v. *The Westchester
County Bank* (4 *Denio,* 97), involved a trust because the defend-
ants had received from a third party a bill of exchange under
an agreement that they would endeavor to collect it, and would
pay over the proceeds when collected to the plaintiffs. A fund
received under such an agreement does not belong to the per-
son who receives it. He must account for it specifically; and
perhaps there is no gross violation of principle in permitting
the equitable owner of it to sue upon an express promise to
pay it over. Having a specific interest in the thing, the un-
dertaking to account for it may be regarded as in some sense
made with him through the author of the trust. But further
than this we cannot go without violating plain rules of law.
In the case before us there was nothing in the nature of a trust
or agency. The defendant borrowed the money of Holly and

received it as his own. The plaintiff had no right in the fund, legal or equitable. The promise to repay the money created an obligation in favor of the lender to whom it was made and not in favor of any one else.

I have referred to the dictum in *Schermerhorn* v. *Vanderheyden* (1 *Johns.*, 140), as favoring the doctrine contended for. It was the earliest in this State, and was founded, as already observed, on the old English case of *Dutton* v. *Poole*, in *Ventris*. That case has always been referred to as the ultimate authority whenever the rule in question has been mentioned, and it deserves, therefore, some further notice. The father of the plaintiff's wife being seized of certain lands, which afterwards on his death descended to the defendant, and being about to cut £1,000 worth of timber to raise a portion for his daughter, the defendant promised the father, in consideration of his forbearing to cut the timber, that he would pay the said daughter the £1,000. After verdict for the plaintiff, upon the issue of non-assumpsit, it was urged in arrest of judgment, that the father ought to have brought the action, and not the husband and wife. It was held, after much discussion, that the action would lie. The court said, "It might be another case if the money had been to have been paid to a stranger; but there is such a manner of relation between the father and the child, and it is a kind of debt to the child to be provided for, that the plaintiff is plainly concerned." We need not criticise the reason given for this decision. It is enough for the present purpose, that the case is no authority for the general doctrine, to sustain which it has been so frequently cited. It belongs to a class of cases somewhat peculiar and anomalous, in which promises have been made to a parent or person standing in a near relationship to the person for whose benefit it was made, and in which, on account of that relationship, the beneficiary has been allowed to maintain the action. Regarded as standing on any other ground, they have long since ceased to be the law in England. Thus, in *Crow* v. *Rogers* (1 *Strange*, 592), one Hardy was indebted to the plaintiff in the sum of £70, and upon a discourse between Hardy and the defendant, it was

agreed that the defendant should pay that debt in consideration of a house, to be conveyed by Hardy to him. The plaintiff brought the action on that promise, and *Dutton* y. *Poole* was cited in support of it. But it was held that the action would not lie, because the plaintiff was a stranger to the transaction. Again, in *Price* v. *Easton* (4 *Barn. & Adolph.*, 433), one William Price was indebted to the plaintiff in £13. The declaration averred a promise of the defendant to pay the debt, in consideration that William Price would work for him, and leave the wages in his hands; and that Price did work accordingly, and earned a large sum of money, which he left in the defendant's hands. After verdict for the plaintiff, a motion was made in arrest of judgment, on the ground that the plaintiff was a stranger to the consideration. *Dutton* v. *Poole*, and other cases of that class, were cited in opposition to the motion, but the judgment was arrested. Lord DENMAN said, "I think the declaration cannot be supported, as it does not show any consideration for the promise moving from the plaintiff to the defendant." LITTLEDALE, J., said, "No privity is shown between the plaintiff and the defendant. The case is precisely like *Crow* v. *Rogers*, and must be governed by it." TAUNTON, J., said, "It is consistent with all the matter alleged in the declaration, that the plaintiff may have been entirely ignorant of the arrangement between William Price and the defendant." PATTERSON, J., observed, "It is clear that the allegations do not show a right of action in the plaintiff. There is no promise to the plaintiff alleged." The same doctrine is recognized in *Lilly* v. *Hays* (5 *Ad. & Ellis*, 548), and such is now the settled rule in England, although at an early day there was some obscurity arising out of the case of *Dutton* v. *Poole*, and others of that peculiar class.

The question was also involved in some confusion by the earlier cases in Massachusetts. Indeed, the Supreme Court of that State seem at one time to have made a nearer approach to the doctrine on which this action must rest, than the courts of this State have ever done. (10 *Mass.*, 287; 17 *id.*, 400.) But in the recent case of *Mellen, Administratrix*, v. *Whipple*

(1 *Gray*, 317), the subject was carefully reviewed and the doctrine utterly overthrown. One Rollin was indebted to the plaintiff's testator, and had secured the debt by a mortgage on his land. He then conveyed the equity of redemption to the defendant, by a deed which contained a clause declaring that the defendant was to assume and pay the mortgage. It was conceded that the acceptance of the deed with such a clause in it was equivalent to an express promise to pay the mortgage debt; and the question was, whether the mortgagee or his representative could sue on that undertaking. It was held that the suit could not be maintained; and in the course of a very careful and discriminating opinion by Judge METCALF, it was shown that the cases which had been supposed to favor the action belonged to exceptional classes, none of which embraced the pure and simple case of an attempt by one person to enforce a promise made to another, from whom the consideration wholly proceeded. I am of that opinion.

The judgment of the court below should therefore be re-versed, and a new trial granted.

GROVER, J., also dissented.

Judgment affirmed.