WILLIAM YOUMANS, Respondent, *v.* APOLLOS C. EDGERTON, Appellant.

*Contract for sale of land — liability of assignee of vendor's contract, for breach by such vendor — Mutual mistake — when money paid under, not recoverable.*

A. contracted to sell land to B., and then for a valuable consideration assigned his contract with B. to C.; B. subsequently paid C. the contract-price, but A. refused to convey the land to him.

*Held,* that B. could not maintain an action against C. for breach of contract, nor on any implied liability arising from failure of consideration, unless C. contracted with A. to fulfill the contract.

*Held,* further, that if C. was a purchaser for value, the fact that both B. and C. believed that A. had title to the premises, although in fact he did not, would not enable B. to recover the money paid to C., as money paid under a mutual mistake of fact.

That B.'s remedy was against A. for breach of contract, if, after a demand, he failed to give a good and sufficient conveyance of the premises.

APPEAL from a judgment in favor of the plaintiff, entered upon the report of a referee.

The action was brought by the plaintiff as assignee of William T. Kilmer and John Hodge against defendant, to recover money paid on a contract for the purchase of land, made by Kilmer with one James R. Shaver.

One Knapp was the original owner of lot number eleven, in regard to which this claim arises. In 1859 he entered into a written contract to sell this lot for $600 to Townsend Shaver, and to give him a warranty deed; the last installment payable June 1, 1865. Townsend Shaver went into possession and remained in possession till he sold to James R. Shaver, but paid nothing. In 1864, Townsend Shaver made a written contract with James R. Shaver to sell him this lot for $1,097.34, and to give him a warranty deed, the last installment payable June 1, 1869. James R. Shaver went into possession and remained in possession till he sold to Kilmer. The referee finds that there is no evidence of payment on this contract. In February, 1867, James R. Shaver made a written contract with Kilmer to sell him this lot and lot ten for $1,500, and to give a good and sufficient deed, the last installment payable June 1, 1874. Kilmer soon after paid Shaver $200, and took possession. After-

wards, in April, 1867, James R. Shaver, for a good and valuable consideration, sold and delivered the last-mentioned Kilmer contract to the defendant, and assigned it to him by a written assignment thereon. The defendant took this assignment in good faith, and paid the full value thereof, and soon after gave Kilmer notice that he held the contract. James R. Shaver did not assign to the defendant the contract which he held of Townsend Shaver, unless such assignment is to be inferred from the assignment of the Kilmer contract. The defendant made no agreement with James R. Shaver to perform the Kilmer contract. Afterwards Kilmer gave the defendant a chattel mortgage, from which the defendant, about April, 1869, realized $200 as a part payment on the contract. Afterwards, and in April, 1869, Kilmer assigned, in writing, to one Hodge his contract with Shaver. Kilmer agreed to pay Hodge $200, and the amount that Hodge should pay, and Kilmer was to remain in possession. Kilmer did remain in possession till 1873, and then the premises were occupied by one Bryden, under Hodge, for about a year, and till the spring of 1874. On the 15th of April, 1874, Hodge entered into a written contract with one Keeler and one Wilson to sell them the lots ten and eleven for $1,700. They took possession of the premises till the fall of 1874, when they agreed with Hodge to abandon, and did abandon the premises. At sundry times, between April 20, 1869, and June 10, 1874, Hodge made payments to defendant on the Kilmer contract, and the last payment fully paid it up. In December, 1874, Hodge assigned the Kilmer contract to the plaintiff, and also all causes of action against Shaver and the defendant for breach of contract.

At the time that Hodge made the last payment to the defendant, he demanded a deed of the premises. On defendant's refusal, Hodge demanded back the moneys paid by him. The referee finds that all of the payments, except the last, were made and received in ignorance of the fact that Knapp had the title, and in the belief that James R. Shaver had a good title when he entered into the contract with Kilmer. It was claimed by the plaintiff and denied by the defendant, that the defendant promised Hodge to give him a deed on the fulfillment of the contract. The referee, in his opinion, states that he makes no

finding on that point. The referee held that the plaintiff was entitled to recover back of the moneys paid to the defendant, such proportion as the value of lot number eleven bore to the whole moneys, excepting such last payment, which was made with knowledge.

*O. W. Smith*, for the appellant.

*Youmans & Niles*, for the respondent.

LEARNED, P. J.:

The plaintiff claims to recover this money on two grounds. First. As money paid upon a consideration which has failed. Second. As money paid under mutual mistake of fact.

First. The question presented in the first ground is this: If A. contracts to sell land to B., and then for a valuable consideration assigns B.'s contract to C., and if B. pays C. the contract-price, and then A. refuses to convey, can B. recover from C. for breach of contract or failure of consideration? It seems to me that he cannot, unless C. has contracted with A. to fulfill the contract. Then, under the doctrine of *Lawrence* v. *Fox* (20 N. Y., 268), B. might have the benefit of C.'s agreement with A. If, for instance, A. had not only assigned the contract, but had also conveyed the land to C., on consideration that C. would perform the contract, then probably B. would have an action on C.'s agreement. But in the absence of any such contract, and if C. had taken from A. only an assignment of B.'s contract, I cannot see that C. would be liable to B. Suppose that by the terms of the agreement B. was to give, and should give, his notes to A. as a consideration for the land. If A. transferred the notes to C., they would carry with them no obligation on C.'s part to perform the contract of sale.

So, in the present case, the plaintiff has taken Hodge's rights by assignment; Hodge took Kilmer's rights in the same way. The plaintiff then stands in Kilmer's place, and the only person with whom Kilmer had a contract was James R. Shaver. No one else has ever agreed to convey to Kilmer or to his assignees. The defendant paid Shaver in full and only received a transfer of Shaver's right to collect the payments on the contract. He

assumed no contract himself. And it should be observed that, strictly, this is not the case of a failure of consideration, but of breach of contract. The consideration for the payments made by Hodge was the contract on Shaver's part to convey. His contract was executory. On performance by Kilmer's assignee, the assignee had a right to demand a deed. If Shaver did not, or could not give a good and sufficient deed, then the action against him would be on the breach of contract—on the breach of the written contract—not on any implied liability for failure of consideration. Thus in *Fletcher* v. *Button* (4 N. Y., 396), and in *Lawrence* v. *Taylor* (5 Hill, 107), both cited by the plaintiff, the action was in each case brought for the breach of the written obligation to convey the land.

The contract, then, was with Shaver, and there is no finding, and, so far as I can see, no evidence, that the plaintiff has ever demanded a deed from him. It is true, that the referee finds that the legal title was in Knapp up to the commencement of the action. But it does not follow conclusively from this fact, that James R. Shaver, if demand had been made of him, would not have obtained, through the Townsend Shaver contract, a good deed from the owner. At any rate his refusal should have been shown.

Second. The plaintiff claims to recover this money as paid under a mutual mistake of fact; and this is the view taken by the learned referee. It is very important to see exactly what the mutual mistake is on which the recovery is claimed. The money was paid severally by Kilmer and by Hodge to the defendant. The learned referee finds that when the payments (excepting the last) were made and received, Kilmer, Hodge and the defendant were in ignorance that Knapp had the title to the lot, and that they believed that at the time when James R. Shaver made his contract with Kilmer he had a good title.

Now, I have already pointed out that the defendant was a *bona fide* purchaser for full value from Shaver of the moneys to be received on the Kilmer contract. It will readily be seen, therefore, that the principle of recovering money paid under mutual mistake will not apply to him, unless it would apply to Shaver, if he had not assigned to the defendant. Suppose, then, for a

moment, that Kilmer and Shaver had made this contract under the mutual mistake (so called) above stated, and that Kilmer had paid Shaver under like mistake, what would have been Kilmer's remedy? Not an action for money paid under mutual mistake, but, as already pointed out, an action for breach of contract upon the failure of Shaver to convey. The cases referred to by the learned referee are cases of an executed contract; where, for instance, a deed has been given and the consideration paid, but the grantor had no title. Now, in the present case, it was not important that Shaver had no title when he executed the contract, if, when it was paid up, he was able to give a good deed which should convey the title. If he was unable then to convey, he was liable on his contract. Money is not paid by mistake when it is paid on an executory contract, and the consideration for the payment is the agreement of the other party.

But further, an action to recover back money paid by mistake is a strictly equitable action, based on the idea that the defendant ought not to retain that for which he has given nothing. Now, the defendant in this case has given the full value for the money he has received. He purchased from Shaver the claim against Kilmer. Shaver, now it is said, cannot perform his part of the contract with Kilmer. It is then Shaver who holds, in this view, money which he ought to refund; not the defendant. The defendant has only received back what he paid to Shaver. The plaintiff's assignor trusted, not to the defendant's promise, but to Shaver's. To illustrate, suppose that Shaver had given Hodge a deed, and had taken Hodge's note or bond for the purchase-money, and had then, for value received, transferred the note or bond to the defendant, and Hodge had paid the same to the defendant. If subsequently it should have proved that Shaver had no title, and Hodge should have sought to recover back the money as paid under mistake, against whom would the action lie, if at all? Clearly against Shaver, who had profited by the transaction; not against the defendant, an innocent party, who had not profited by it. If the present recovery be sustained, then the defendant is left remediless; and Shaver, the party who is confessedly to blame, retains all the benefit of the contract. For the defendant would seem to have no remedy against Shaver, and

Shaver has had full payment on the contract. It was proved on the trial that Shaver is insolvent. That fact accounts probably for the attempt to make the defendant liable. But, of course, Shaver's insolvency is no reason for the defendant's liability. The plaintiff urged, on the trial, that there was evidence that the defendant agreed with Hodge to give him a deed. An examination of the case on this point satisfies me that this was not proved. Some other questions are presented as to the allowance of interest before demand, and as to the effect of the plaintiff's possession, and of the assignment to him of the contract, and of the want of an actual surrender. But it is unnecessary to pass upon them.

The judgment should be reversed; a new trial granted; reference discharged; costs to abide the event.

Present — LEARNED, P. J., BOARDMAN and BOCKES, JJ.

Judgment reversed, and new trial granted; reference discharged; costs to abide event.