# THE ROGERS LOCOMOTIVE AND MACHINE WORKS, Respondent, *v.* ALBERT KELLY AND LAWRENCE D. ALEXANDER, Appellants, Impleaded with Others.

*Deposit of funds by a company for the payment of coupons on its bonds — when it creates a trust for the benefit of the bondholders, and is not liable to attachment by a creditor of the company.*

The Mississippi Central Railroad Company issued its mortgage bonds, with coupons attached, and subsequently became consolidated with another corporation, payment of the bonds being assumed by the new company. On May 1, 1875, the treasurer of the latter company deposited with the defendants, Kelly & Alexander, $25,000, they signing a receipt, stating that they had received it "in trust, to apply the same to the payment of an equal amount of the coupons of the first mortgage bonds and consolidated mortgage bonds of the Mississippi Railroad Company * * * the said money not to be subject to the control of the said company, otherwise than for the payment of said coupons, as above described."

*Held,* that such deposit created a trust for the benefit of the holders of the coupons of the said bonds, and that the fund was not liable to be attached in an action brought, by a creditor of the company depositing it, to enforce a debt due from it to him.

APPEAL by the defendants Kelly & Alexander from the judgment entered herein upon the report of a referee, and also an appeal by the defendant Bills from an order granting Connor, the sheriff, an additional allowance.

Upon certain obligations of the New Orleans, St. Louis and Chicago Railroad Company, the respondent Bills, on the 30th April, 1875, began an action in this court against the said company, a non-resident corporation, in which action a warrant of attachment against the property of said company was issued on the same day, and delivered to defendant Conner, as sheriff, for service, and was by the latter duly served upon the New Orleans, St. Louis and Chicago Railroad Company.

At this time the New Orleans, etc., Company had assumed to pay certain bonds issued by the Mississippi Central Railroad Company, the interest coupons upon which became payable on the first day of May, 1875.

On the first day of May, 1875, the sheriff, in pursuance of said warrant, made the usual levy of attachment upon all the property,

debts, etc., of said New Orleans, etc., Company, in the hands or under the control of, or owing by, the appellants, Kelly & Alexander, bankers in the city of New York, and, particularly, levied upon certain moneys of the New Orleans, etc., Company, placed by it in the hands of Kelly & Alexander, for the purpose of paying such of said interest coupons of said Mississippi Central bonds as should be presented to Kelly & Alexander for payment.

The total amount of this money was $25,000; but at the time of the service upon Kelly & Alexander, they had in their hands $13,148.06 only remaining, as appears by the certificate given by them at the time to the sheriff.

Subsequently in June, 1876, the plaintiff in this action, the Rogers Locomotive Works, brought this action against Kelly & Alexander to have this $13,148.06, or a portion of it, applied to the payment of certain of these same coupons, which had become payable on first day of May, 1875, and of which this locomotive company was the owner. To this action the sheriff was made a party defendant, as claiming a lien on this fund or indebtedness, and on application of this respondent Bills, the latter was by order made a party defendant to protect his interest in the attachment.

Meanwhile, the action which Bills had brought against the New Orleans, etc., Company, and in which the attachment was levied, had been transferred to the United States Circuit Court in this city, where, on the 2d day of May, 1877, Bills recovered judgment against said railroad company for $26,904.43.

The judgment entered upon the referee's report in the action brought by the Rogers' Locomotive Works determines that at the time of service of the attachment upon Kelly & Alexander, the money remaining in their hands, to wit, the $13,148.06, was the property of the New Orleans, etc., Company, and subject to the attachment, and directs that Kelly & Alexander pay the same to the defendant, the sheriff, who is to receive the same on behalf of defendant Bills, and apply it upon his judgment.

*Wheeler H. Peckham,* for the appellants. The referee erred in directing any of this fund to be paid to defendant Conner, sheriff, etc. Bills' action was commenced in this court, May 1,

1875. May 24, it was removed to the United States Circuit
Court. Thereupon this court lost all jurisdiction of that action
and the attachment was vacated. (*N. W. Dist. Co.* v. *Corse*, 4
Bissell, 514; *N. Eng. Co.* v. *Bliven*, 3 Blatch., 240; *McLeod* v.
*Duncan*, 5 McLean, 342; *Hatch* v. *R. R. Co.*, 6 Blatch., 105.)
The deposit of the money, on the terms expressed, made Kelly &
Alexander trustees of the coupon holders. (*Lawrence* v. *Fox*,
20 N. Y., 268; *Burr* v. *Beers*, 24 id., 178; *Thorp* v. *Coal Co.*,
48 id., 253; *Claflin* v. *Ostrom*, 54 id., 581; *Arnold* v. *Nichols*,
64 id., 119; *Milvain* v. *Tomes*, 21 N. Y. Sup., 21.) The deposit
and contract constituted a specific appropriation of the fund
so deposited in favor of the coupon holders, and had Kelly
& Alexander paid it to the sheriff, such coupon holders could
have followed and recovered the fund. (*Matter of Le Blanc*,
21 N. Y. Sup., 9; see, also, the late case of *Martin* v. *Funk*,
in Court of Appeals, reported in 7 Cent. Law Jour., 462,
and the many cases cited.) The assent of the *cestui que
trust* — the coupon holders — was unnecessary. (*Nicoll* v.
*Mumford*, 4 Johns. Ch., 528, and cases cited; *Cunningham* v.
*Freeborn*, 1 Edw. Ch., 263; 11 Wend., 249, 250; *North* v.
*Turner*, 9 Sergt. & Rawle, 224; *Brooks* v. *Marbury*, 11 Wheat.,
78–97; *Halsey* v. *Whitney*, 4 Mason, 207–214; 2 Kent Com.,
533, and note Burrill on Assignments, §§ 125, 284, 286.) If the
railroad company retained any control over this fund, it could
not be more than a power of revocation. The title had passed.
Now, a power of revocation is not an interest subject to attach-
ment. It is a mere power which cannot be attached, and which
a court of equity will not compel the holder to execute (see a full
discussion in *Jones* v. *Clifton* [7 Cent. Law Jour., 89); U. S.
Circuit Court for Kentucky, see, especially, second column of
page 92 and second column of page 93.)

*Artemas H. Holmes* and *George H. Adams*, for the respondents.
The contract was not valid as to the company, and the coupon
holders had acquired no rights, nor could they have prevented
the company from reclaiming the money. (*Kelley* v. *Roberts*, 40
N. Y., 432 ; *Southern Express Co.* v. *Dickson*, 4 Otto, 549;
*Ætna National Bank* v. *Fourth National Bank*, 46 N. Y., 82,

and the English cases cited and approved in that case, viz.: *Wedlake* v. *Hurley*, 1 C. & J., 83; *Williams* v. *Everett*, 14 East, 582.)

INGALLS, J. :

The facts which we deem essential in disposing of this case are substantially the following : The Mississippi Central Railroad Company, being a corporation, issued its mortgaged bonds with coupons attached. That corporation became consolidated with the New Orleans, Jackson and Great Northern Railroad Companies ; and the new corporation was named the "New Orleans, St. Louis and Chicago Railroad Company." The last named corporation assumed the payment of the bonds of the corporation first named. Certain of the coupons would become due on the 1st of May, 1875, and to provide for the payment thereof the New Orleans, St. Louis and Chicago Railroad Company, by and through its assistant treasurer, John M. C. Rodney, deposited with the defendants, Kelly & Alexander, $25,000, and the following instrument was executed, which specified the purpose of such deposit :

"Received, NEW YORK, *May* 1st, 1875, from J. M. C. Rodney, twenty-five thousand ($25,000) dollars *in trust*, to apply the same to the payment of an equal amount of the coupons of the first mortgage bonds and consolidated mortgage bonds of the Mississippi Railroad Company, in the order in which such coupons shall be presented to us for payment, after having been duly identified for payment at our office by stamp impressed thereon, the said money not to be subject to the control of the said company, otherwise than for the payment of said coupons as above described.

"KELLY & ALEXANDER."

Subsequently, an additional sum of $5,000 was placed by the same party in the hands of Kelly & Alexander for the same purpose, which deposit was accompanied by the following letter :

"NEW YORK, *May* 1st, 1875.

"Messrs. KELLY & ALEXANDER :

"*Gentlemen* — I herewith hand you my check for thirty thousand ($30,000) dollars, of which you will please place to my

credit $25,000, and which you will understand is placed with you to indemnify you and the New Orleans, St. Louis and Chicago Railroad Company, against a warrant of attachment served on you by Orrin A. Bills, and which sum you will hold subject to any claim, against me ' or said company, in favor of said Bills under said attachment, and the residue is handed to you *in trust* to be applied to the payment of coupons, in the same way as the sum of $25,000 handed to you this morning.

"Yours, very respectfully,

"J. M. C. RODNEY."

Kelly & Alexander commenced paying the coupons, and when they had disbursed of such fund $11,851.94 they received notice of the attachment in favor of Orrin A. Bills, for a debt of $21,864, arising upon contract, against the New Orleans, St. Louis and Chicago Railroad Company.

We do not perceive that the last named company in any manner attempt to question or repudiate the deposit of the $20,000 above mentioned for the payment of the coupons, or complain of the manner Rodney accomplished the same. It appears that there are outstanding a large amount in unpaid coupons fairly within the contemplation of the trust. The evidence is too clear to admit of a doubt that McComb, the president of the railroad company, intended that the fund, created by the two deposits, should be devoted to the payment of such coupons, and there is no indication that he was particular in regard to the precise manner in which the fund reached its destination, but did desire that the money should create a fund to pay such coupons, instead of being subjected to seizure by Bills. McComb drew his checks in blank as to date and amount, thus showing clearly an intention to leave to Rodney, who was also an officer of the same corporation, the arrangement of the details by which the fund should be placed in the hands of Kelly & Alexander for the defined purpose. All of the circumstances attending the transaction conspired to characterize such deposit as the creation of *a trust* for the benefit of the holders of the coupons.

The receipt *expressly* declares that Kelly & Alexander received the money *in trust,* and that the same should *not be sub-*

ject to the control of the company, otherwise than ' for the payment of said coupons.

The letter which accompanied the additional $5,000 contained a declaration that such sum was delivered to Kelly & Alexander *in trust*, to be applied as they had been directed in regard to the $25,000. To allow the main purpose of such deposit to be defeated, and the holders of the coupons thereby deprived of the money, because it is ascertained that there has been a slight departure from the directions by which the money was to be drawn and placed in the hands of Kelly & Alexander, and in regard to which the real parties interested in that transaction do not complain, would seem to sacrifice the substance to the shadow.

There is certainly no just reason shown why the holders of the coupons should not have the benefit of the fund, created expressly for their benefit by the party which owed the debt, instead of its being absorbed by general creditors. There seems to be no pretence that the fund has been diverted by Kelly & Alexander from the purpose intended, or that it has been improperly managed in any way. We are satisfied that an irrevocable trust was created for the benefit of the holders of the coupons which the courts should see executed. The New Orleans, St. Louis and Chicago Railroad Company, by the consolidation contract, assumed the payment of such bonds as a part of the arrangement, and the debt thereby became its own. The original corporation which executed the bonds became absorbed in the new corporation by reason of such consolidation, and through it properly endeavors to discharge its just obligations.

We are unable to discover anything in the nature of the trust, or in the manner in which it has been thus far executed, which renders it illegal or inequitable. When the money was received by Kelly & Alexander, it became sacredly dedicated to a clearly defined purpose, for the benefit of a class of persons specified, and who were entitled to the money. The parties to the transaction do not complain, and we perceive no sound reason why a general creditor should be allowed to intervene, seize the fund, and defeat the rights of the holders of such coupons. It is not a sufficient answer that some of the holders of the coupons had not presented their coupons in form, before the issuing of the attachment. The

evidence shows that they were outstanding, uncanceled, and that payment is now sought from such fund.

If the view which we have taken of this case is correct, it becomes unnecessary for us to attempt to ascertain exactly what was intended to be decided in *Lawrence* v. *Fox* (20 N. Y., 268), or how far the doctrine of that case has been defined or restricted by subsequent adjudications. We have placed this case upon principles which had a clearly recognized existence long before the case of *Lawrence* v. *Fox* was decided. We conclude that the learned referee erred in the particular pointed out, and that consequently there must be a new trial, with costs to abide the event thereof before another referee, unless the parties shall stipulate to retry before the same referee. It is unnecessary to express any opinion in regard to the order appealed from in reference to the allowance, as that question will properly arise upon the next trial.

Davis, P. J., and Brady, J., concurred.

Judgment reversed, new trial ordered, costs to abide event.