Ingraham, J.
This action is brought by plaintiff as a stockholder of the New York Elevated Railroad Company, on behalf of himself and all other stockholders who may join with him in this action, to enforce an agreement or lease dated the 20th day of May, 1879, whereby the New York Elevated Railroad Company leased its railways and other property, rights and franchises of every description, to the defendant, the Manhattan Railway Company. By that lease the Manhattan Company agreed to pay to the New York Company a certain sum of money as rent, to pay the principal and interest of certain bonds of the .New York Company; and further agreed as follows:
“ Article II. The Manhattan Company guarantees to the New York Company an annual dividend of ten per cent, on the capital stock of the New York Company to the amount of six millions five hundred thousand dollars ; that is to say, the Manhattan Company will, each and every year during the term hereby granted, beginning with the first day of October, 1879, pay to the .New York Company six hundred and fifty thousand dollars, free of all taxes, in equal quarter-yearly payments of one hundred and sixty-two thousand five hundred dollars each on the first days of January, April, July and October in each year, the first of said payments to be made on the first day of January, 1880. The Manhattan Company will, from time to time, execute in proper form a guarantee to the above effect, printed or engraved upon the certificate of stock of the New York Company.”
In pursuance of this agreement, the defendant, the Manhattan Co., caused to be printed or engraved on the certificate of plaintiff’s stock as follows: “ The Manhattan Railway Co., for value received, has agreed to pay to the New York Elevated Railroad Co. an amount equal to ten per cent, per annum on the capital stock of the whole company—that is, on six and a half million dollars, payable quarterly, commencing January 1, 1880.”
*177 The complaint demands judgment that the Manhattan Co. pay to the New York Co. dividends at the rate of ten per cent, per annum that would accrue since April, 1881; that the defendant pay to plaintiff the dividends due him upon his stock; that the defendant be restrained from doing anything prejudicial to the rights of the plaintiff; and that plaintiff have such other relief as may be just.
It is very clear that this agreement gives a stockholder no cause of action against the Manhattan Company to recover the amount to be paid to the New York Company. The agreement is to pay a certain sum of money to the corporation, the New York Company. This sum is fixed as ten per cent, of the outstanding stock of the New York Company. Nothing was to be paid to the individual stockholders, nor did the Manhattan Company in any way agree that the stockholders of the New York Company should receive the money it agreed to pay to the New York Company, or that such money should be used for the purpose of a dividend on the stock of the New York Company.
The case of Wheat v. Rice (97 N. Y. 296) appears to be conclusive on this point. In that case the plaintiff agreed “ to assume and pay one quarter of the indebtedness” of the copartnership. The court held that no promise was made to pay any single one of the creditors, or for the benefit of any one of them, and that a creditor of the copartnership could not maintain an action under the agreement against the plaintiff. That case is much stronger than the case at bar, as there was in that case an agreement to pay the indebtedness, while in this case there is no agreement to pay any obligation of the New York Company, to the plaintiff or to its stockholders; it is simply an agreement to pay the corporation.
A payment to the New York Company of the quarterly payment would have released the Manhattan Company from its obligation under the lease, and the money paid would become the property of the corporation, *178 liable for its debts, and the stockholders would have no claim to it until, by some act of the corporation, it had been appropriated to them. There was no agreement of the New York Company that the money to be received should be paid to its stoclcholders, and there was, therefore, no obligation on the part of the New York Coni’ pany to its stockholders which the Manhattan Company undertook to discharge.
The principle involved is entirely different from the case Lawrence v. Fox (20 N. Y. 268) and cases of like character. This is in accordance with the. opinion of the Chief Judge of this court, when this action was before him, and of Mr. Justice Cullen in the Beveridge case.
The only relief to which the plaintiff would, under any circumstances, be entitled, would be to have the obligation of the Manhattan Company to the New York Company enforced; but before such relief could be granted, it must appear that such an obligation was in force when the action was commenced.
In October, 1881, an agreement was made between the New York Company, the Metropolitan Company and the Manhattan Company, by which the lease of 1879 was modified so that the sum to be paid by the Manhattan Company to the New York Company was six per cent, upon its capital stock instead of ten per cent., and in other important particulars. This agreement was ratified by the stockholders of the New York Company on January 10, 1882, twenty-six. thousand six hundred and forty-one shares of stock being represented and voting at this meeting, and twenty-five thousand nine hundred and four shares of stock voted in favor of ratifying the new agreement, and seven hundred and thirty-seven shares voted against such ratification.
That this agreement of October, 1881, was binding upon the New York Company after it was ratified by the vote of the stockholders is clear. The directors of both the Manhattan and New York Companies being *179 substantially the same, the agreement would, under the decision of Mr. Justice Van Brunt, in the case of The Metropolitan Railway Company v. The Manhattan Railway Company, hereafter referred to, have been voidable at the election of either of the corporations, but, when ratified by the majority of the stockholders, it became binding.
There is no evidence to show that the vote of the stockholders ratifying the October, 1881, agreement was induced by any fraudulent act or representation of the directors, and the large majority by which the agreement was ratified shows that the stockholders of that company were practically unanimous in ratifying the agreement as being for the best interests of the company.
The Manhattan Company paid to the New York Company the amount called for by the October agreement down to May, 1884. It appears that subsequently the Metropolitan Company repudiated that agreement, and in an action in which the Metropolitan Company was plaintiff and the defendant in this action and others were defendants, a judgment was entered on May 27, 1884, declaring the agreement null and void as between the parties to that action or any of them, and the same was set aside and annulled as to the defendant to this action, on the ground that the stockholders of the Metropolitan Company had not acquiesced in the agreement of October 21. Judge Van Brunt’s conclusion is: “ That the directors of the Metropolitan Company had no power to modify the lease of May, 1879, in the manner that they did by the October agreement, without the assent of the stockholders, and that if they had such power, the presence of the directors in the Metropolitan Board who were also directors in the Manhattan Company at the time of the execution of the October agreement, gave either company the right in equity to repudiate those contracts within a reasonable time, although the contracts may have been perfectly valid at law.”
*180 • After the announcement of Judge Van Brunt’s decision, a meeting of the stockholders of the New York Company was called to take into consideration the relations between the elevated railway companies as affected by such decision, and adopt such measures as the stockholders may deem best for the interest of the company. Such meeting was accordingly held, and two agreements were presented to it, one of which was a surrender of the lease of 1879, and a re-conveyance of the leasehold premises from the Manhattan Company to the New York Company, and the agreements were approved and ratified by a vote of fifty-seven thousand eight hundred and thirty-six shares of stock in favor of, and five hundred and twenty shares of stock opposed, and leaving out of the majority all the stock voted on by the Manhattan Company, there was still a large majority in favor of the ratification of the agreement. «
Subsequently, about May, 1884, the Manhattan Company delivered the leasehold property to the New York Company, who took exclusive possession thereof, and retained such possession and control until about August 1, 1884, when a new agreement between the elevated railway companies was executed.
It is clear that this surrender of the lease and the acceptance of the demised property was valid. If the original lease of 1879 was valid, the parties to it could surrender it, and upon its surrender it became abrogated and all subsequent obligations under it voided. If this agreement to surrender the lease had been .made by the directors of the two companies without the consent or ratification of the stockholders of the company, it would, under the circumstances and under the rules as stated by Mr. Justice Van Brunt in the Metropolitan Company case before referred to, have been voidable at the option of the corporation. But here the corporation had never elected to avoid the agreement to surrender, but, on the contrary, had ratified and adopted it.
The case of Pearson v. The Concord Road, decided by *181 the Supreme Court of New Hampshire, does not apply. It was there found as a fact that the two upper roads had bought a controlling interest in the Concord road for the purpose of making, with themselves as controlling managers of the Concord road, contracts more favorable to themselves, and they had accomplished that purpose, and the court held that no director or stockholder in the upper roads could act as a director of the Concord road in making agreements between the Concord road and the upper roads.
In the case at bar, the agreements of 1881 and May, 1884, were, as before stated, submitted to the stockholders of the road, and by them ratified, and, so far as appears, leaving out the shares owned by the Manhattan Company and by the directors of the Manhattan Company, there was a majority of the stockholders present and voting in favor of ratifying the agreements.
I am, therefore, clearly of the opinion that, after the surrender of the lease in May, 1884, there was no obligation or liability of the Manhattan Company to the New York Company.
I have not considered the question as to the validity of the resolutions passed by the New York Company in relation to dividends on the stock of the Manhattan Company at the time of the execution of the May agreement. It does not appear that such resolutions were ever carried into effect, and by the subsequent agreement between the parties it was abrogated. Nor is the validity of the agreement of August 1, 1884, involved in the determination of this action. The agreement of August 1, 1884, is not set forth in the complaint, and the question of its validity is not included in any issue presented by the pleadings. As the agreement or lease of 1879 is abrogated and not in force, I do not see how plaintiff can obtain any relief in this action. This is substantially the same conclusion as that reached by Mr. Justice Culler in the Beveridge case.
There is no evidence in this case that the New York *182 Company had declared any dividend on the stock held by plaintiff, nor that plaintiff demanded a dividend at the rate of six per cent.; plaintiff is not, therefore, entitled to judgment for the dividends at six per cent.
The elaborate argument submitted by counsel for the plaintiff has been carefully considered, but it appears to me that the views hereinbefore expressed dispose of the action, and I consider further discussion unnecessary.
Assuming that the lease of 1879 is valid, neither of the agreements of October, 1881, or May, 1884, is beyond the corporate powers of the contracting parties, nor is there any evidence from Avhich it can be held that a majority of the stockholders are trampling upon the rights of the minority and acting in fraud of them. A person purchasing stock of a corporation thereby of necessity assents that a majority of‘the stockholders shall control the policy of the corporation; and so long as the acts of the majority are in good faith within the powers of the corporation, and are not prohibited by law, they are valid, and a dissenting stockholder has no right to ask a court of equity to compel the majority of the stockholders to accept his views of the management of the company. I can see nothing in either of the agreements mentioned, or in the acts of the stockholders in adopting and ratifying them, which would show such fraudulent mismanagement of the corporate property or franchise as would justify a court of equity in interfering.
On the whole case I think the defendant is entitled to judgment, with costs.