SIMON KLABER and JAMES KLABER, Respondents, *v.* WILLIAM TAYLOR, CARLTON S. GILSON and JAMES ARMSTRONG as Executors, etc., of JOHN TAYLOR, Deceased, Appellants.

*Fund held as security against claims — equitable assignment thereof.*

The person eventually entitled to the balance of a fund held by executors, as security for the payment of such claims against their testator's estate growing out of a certain transaction as they might be compelled to pay, signed and delivered to the executors a paper directing them to compromise, settle and pay, for an amount arbitrarily fixed, a claim made against the estate by a third party, which was disputed by the executors. This paper was not delivered to the third party, nor was it issued with his knowledge, and no agreement or understanding on the subject was had with him; it was retained by the executors, who never tried to settle the claim.

*Held,* that this did not work an equitable assignment of part of the fund or entitle the third party to maintain an action against the executors for a specific part of the fund.

APPEAL by the defendants, William Taylor, Carlton S. Gilson and James Armstrong, as executors, etc., of John Taylor, deceased, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the city and county of New York on the 12th day of December, 1892, upon a verdict rendered by direction of the court at the New York Circuit.

*Hamilton Odell,* for the appellants.

*Morris S. Wise,* for the respondents.

BARRETT, J. :

The defendants are the executors of John Taylor, deceased. Mr. Taylor in his lifetime held mortgages to a large amount upon an apartment house named " the Osborne," which was built by one Thomas Osborne. The plaintiffs furnished certain marble work to be used in this building, for which there is still due them $1,000. Upon Taylor's death, an agreement was entered into between his executors, these defendants, and Mr. and Mrs. Osborne for a settlement of all questions with regard to Taylor's mortgages. The material part of this agreement, as bearing upon the present action, is that between the defendants and Mrs. Osborne. It recites that Mrs. Osborne claims to have advanced to her husband out of her

separate estate the sum of $30,000 " toward the erection of said Osborne apartment house."

For considerations not necessary to be detailed, the defendants agree to pay Mrs. Osborne $5,000 upon the signing of the agreement, and to hold $25,000 for her benefit, subject to certain terms and conditions. These terms and conditions are substantially as follows: Claims having been made against Taylor's estate, growing out of the building in question, which were to be defended, the executors were to hold this $25,000 as their security against such claims. In case of defeat the executors were to pay themselves out of the sum so withheld, but in case of success they were to pay Mrs. Osborne the proportionate part of the sum thus released. The agreement then provides as follows:

" This mode of procedure is to be continued by the executors until the whole amount of such claims shall have been paid or are finally disposed of, or until the whole of said balance shall have been exhausted, either by payment of claims or payment to said Susannah Osborne ; when exhausted in either way, the executors are to be and are hereby released from any further liability or payment on account hereof."

It appears that the plaintiffs' claim already referred to was included in the list specified in the agreement, and was, consequently, one of those as security for which the defendants were to hold the $25,000.

The plaintiffs never proceeded against the defendants upon this claim. They charged the marble work to Mr. Osborne upon their books and subsequently brought an action against him for the amount so due them, in which they recovered judgment on the 5th of March, 1890. Nor is the present action brought to recover upon the claim referred to in the agreement, but to recover a specific part of the $25,000 held by the defendants as security for that claim. The facts upon which the latter contention is based are briefly these : A little over a year after the agreement was made Mrs. Osborne signed a paper in which she authorized and directed the defendants, out of the moneys remaining in their hands under the agreement, " to compromise, settle with and pay it, Klaber & Son, in full settlement of their claim, not to exceed the sum of $939."

FIRST DEPARTMENT, JUNE TERM, 1893.      [Vol. 70.

This paper was received by the defendants and retained by them. But they never acted upon it further than that the defendant Gilson, as executor, drew a check for the amount, payable to the order of the defendant Armstrong, who never used it. The defendants in fact never tried to " compromise or settle " with Klaber & Son, and the latter knew nothing of what Mrs. Osborne had done, and never heard of the order, check or transaction, until long afterwards.

We can scarcely treat as serious the contention that, upon these facts, there was an equitable assignment of part of the sum reserved by the defendants. The moneys were not held by the defendants for the payment of the plaintiffs' claim, or for the payment of any claim, but as security for the payment by them of such claims as should be established against them under the agreement. Mrs. Osborne had no more right to require the defendants to compromise and settle the plaintiffs' claim than she had to compel the plaintiffs to accept less than their due. The plaintiffs had no possible claim against her, and, consequently, there was no basis for an appropriation to pay a debt of hers. But even if she chose to appropriate her own money to the payment of her husband's debts, she could only do so when she became entitled to the fund, by virtue of its release from the claims against the defendants as specified in the agreement. She could not secure such release by forcing the defendants to pay $939 upon a claim which, as against them, they believed to be wholly unjust. Mrs. Osborne, therefore, had no fund in the defendants' hands which she could *presently* appropriate, and, consequently, the order effected no such appropriation. It simply amounted to an expression of her wish that the defendants should concede their liability to the extent suggested, and induce the plaintiffs to look at it in the same way. And, further, there was no delivery of the instrument to the proposed assignee, no agreement or understanding on the subject, and no knowledge even on the part of such assignee that the instrument had been executed.

A suggestion is made that the defendants may be liable upon the doctrine enunciated in *Lawrence* v. *Fox* (20 N. Y. 268). This celebrated case has been invoked in support of many vagaries, but none quite so far fetched as this. Mrs. Osborne assumes to direct the defendants to settle a claim against themselves, made by a third person (which claim they dispute), for an amount which she arbitrarily

fixes, and to pay the sum, in case the third person is willing to accept it, out of moneys which they hold for their own security.

There is surely no possible analogy between this and a promise made by the defendants to Mrs. Osborne upon a valuable consideration for the benefit of the plaintiffs.

There is one other fact which should be mentioned. It appears that on an examination in supplementary proceedings in another case, Mr. Armstrong submitted an account in which Mrs. Osborne was charged with the amount of the check for $939 as paid to Klaber & Son in settlement of the claim. This charge was a plain mistake. The fact was that the check was not delivered or used, and the amount was not paid in settlement or otherwise. The entry was simply an inaccurate statement made by an oversight to a stranger to the present suit — a statement which misled no one, and of which neither Mrs. Osborne nor Klaber was aware. Such a statement certainly created no estoppel, nor did it in anywise affect the real facts of the case.

The conclusion is inevitable, from all the facts, that this action is without merit, and that the complaint should have been dismissed.

The judgment must, therefore, be reversed and a new trial ordered, with costs to the appellants to abide the event.

Van Brunt, P. J., and Follett, J., concurred.

Judgment reversed and new trial ordered, with costs to the appellants to abide event.