John Morrison, Plaintiff, *v.* Louis Gentler and Another, Defendants.*

Municipal Court, Borough of Brooklyn, First District, September 7, 1934.

*Charles H. Levy,* for the plaintiff.

*George Feuerstein,* for the defendant employer.

Strahl, J. This is a motion by defendant employer to dismiss the complaint because it does not state facts sufficient to constitute a cause of action.

Plaintiff sues for wages by virtue of the President's Re-employment Agreement.

Plaintiff as a wage earner is entitled to the benefits of and may recover under the President's Re-employment Agreement signed by his employer, the defendant herein, and also by the President of the United States, the President executing the same by authorization of the National Industrial Recovery Act (NRA). It is true the plaintiff, wage earner, did not sign said agreement, but it having been made for his benefit he may recover thereunder. (*Lawrence v. Fox,* 20 N. Y. 268.)

The National Industrial Recovery Act was passed to meet an existing emergency actually involving the public interest and is within the constitutional power of Congress because based on the doctrine of affectation with a public interest.

The concept of " affectation with a public interest " is the established test by which the constitutionality of laws looking to the control or regulation of business and services are tested by the courts and was first introduced into our constitutional law nearly sixty years ago.

---

* See, also, *Mesloh* v. *Schulte* (151 Misc. 750); *Canton* v. *Palms, Inc.* (152 id. 347).

There is a motive for legislative interference when a public interest is actually involved and the community at large affected. (*Frost* v. *Corporation Commission,* 278 U. S. 515; *Williams* v. *Standard Oil Company,* Id. 235; *Wolff Co.* v. *Industrial Court,* 262 id. 522; *Tyson* v. *Banton,* 273 id. 418, and *Munn* v. *Illinois,* 94 id. 113.)

I will take judicial notice of the fact that the public interest is affected by an existing emergency.

The Recovery Act is clearly a measure to meet this emergency, which is worse than war.

It is an economical planning act on a national scale to meet the existing national emergency of disorganization of industry and widespread unemployment.

This permissive legislative interference which aims to help national industrial recovery, foster fair competition and solve the problems of a troubled nation, dictates the hours of labor, the amount of wages, generally cares for its people in private life, and applies also to services rendered and wages. So plaintiff comes under its protection.

This idea of paternal government existed as far back as the seventeenth century. The power of a government to regulate businesses and prices ever existed throughout civilization through or by the co-operation of the legislature, the executive and the judiciary and was never given up although its regulation was abandoned.

The old English laws even restricted the manners in which, and places where, business could be done.

It was a criminal offense in old England to corner the food market; or to buy and immediately sell foodstuffs in the same market place or within a radius of four miles; or to buy or contract for merchandise while *en route* to market or dissuade persons from bringing same there or to persuade them to enhance the prices when there, the crimes being called, respectively, engrossing, regrating and forestalling.

Even occupations were under legal regulations in England during the middle ages. The case of *Tailors of Ipswich* (11 Co. Rep. 53A) recites where a domestic servant was sued to recover a penalty because he made clothes for his master and family in violation of law which prohibited one from exercising the trade of tailor without permission, and his defense was he had qualified for the art of tailor and manufactured same at his master's command.

Motion denied.