(23 App. Div. 580.)

## JOHNSON v. HALL SIGNAL CO.

(Supreme Court, Appellate Division, First Department. December 31, 1897.)

CONTRACT—SUFFICIENCY OF EVIDENCE.

> The defendant had become obligated to pay a sum of money to one J., who, in turn, was bound, as between himself and plaintiff, to pay a portion thereof to plaintiff when received. J. died, and the defendant desiring an extension of time for two remaining payments, one of which was then due, it was mutually agreed by plaintiff and the representative of J.'s estate to accept its notes for the amount due; and, upon plaintiff's insistence, notes representing his share therein were given directly to him by common agreement of all parties. In an action thereafter brought to recover from defendant plaintiff's share of the final payment, his testimony that the agreement that his share should be paid directly to him by defendant applied to this final payment also was inconclusive, and was directly controverted by three witnesses, and rendered doubtful by other evidence. *Held*, that he had failed to make out his case by a preponderance of evidence.
>
> Rumsey and O'Brien, JJ., dissenting.

Appeal from trial term, New York county.

Action by Henry Johnson against the Hall Signal Company. From a judgment entered on a verdict for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

George W. Miller, for appellant.
Abel E. Blackmar, for respondent.

BARRETT, J. Charles R. Johnson's contract with the plaintiff to pay him out of the moneys received from the defendant was but his personal covenant, and did not constitute an assignment of any part of the moneys. Rogers v. Hosack's Ex'rs, 18 Wend. 319, 334. Hence his cause of action, if any, arises out of the verbal agreement alleged in the complaint. The allegation is simply of an agreement by the defendant, made directly with the plaintiff, to pay him his share of the money remaining due. For such a contract there would seem to be no consideration whatever. Treating the agreement, however, though not so averred, as one made

by the defendant with the Johnson estate, for the plaintiff's bene-
fit, it would seem to afford him a cause of action, under the doc-
trine of Lawrence v. Fox, 20 N. Y. 268. Whether there is sufficient
proof of such a cause of action is the question to be decided. In
determining it, it must be remembered that this is not an equi-
table action, to which the Johnson estate is a party, founded upon
a tripartite verbal agreement to substitute for the original con-
tract two verbal contracts,—one with the plaintiff for the pay-
ment of one sum, and one with the Johnson estate for the payment
of another,—and thus, under such tripartite verbal agreement, to
apportion the remaining payment between the plaintiff and the
Johnson estate. It is an action at law, by the plaintiff against the
defendant alone, upon an independent verbal agreement. The
Johnson estate is not a party thereto, and is not bound by the re-
sult. This being so, the evidence should at least be clear and un-
equivocal that that estate did make the alleged verbal agreement,
and did thereby release its rights under the original contract pro
tanto against the defendant. Otherwise, the latter might be held
to a double liability.

The question, then, is: Did the parties agree in the manner
thus claimed to sever the contract price specified in the written
contract? In scanning the plaintiff's proof on the latter head, it
is noteworthy at the outset that there is no pretense of any af-
firmative promise or agreement by either Miller or the defendant's
officers to pay this specific money to the plaintiff. The latter's
contention is that he refused to sign the extension which the de-
fendant desired, unless such an agreement was made with him, and
that there was an assent to this demand. It was thus necessary
that the precise nature of that demand should be distinctly shown.
In describing the interview of July 7, 1894, in his direct exami-
nation, the plaintiff says that three notes had been made out to
the order of the Johnson estate for one-half of the amount then
due by the defendant; and that "I would not consent to sign that
document [the extension agreement] unless I received my pro rata
share direct." This language, naturally construed, relates simply
to the payment then to be made. What followed enforces this
view. Miller consenting, notes were made out to the plaintiff's
order for his share of that payment, and a receipt was drawn, stat-
ing that the notes given to him and Miller "are in full for one-half
of the sum now due on the contract of said Hall Signal Company
for purchase of Johnson Railroad Company stock," and embody-
ing a stipulation that "the time for the payment of said remaining
sum so due is, and is to be, extended to July 7, 1895, when the same
is to be payable, with interest." There is no intimation here that
the future installment is to be paid in any other manner than the
original contract provided, viz. to the Johnson estate. Reference
is made to the original contract, and the extension is of the time
to pay the money "so due"; that is, of the defendant's obligation
to the Johnson estate. The reason for getting the plaintiff's sig-
nature, as Miller's undisputed testimony shows, was to forestall
any claim which he might have against the Johnson estate on ac-

count of the extension. If the parties had intended to vary the original contract by severing the future payment, they would certainly have so stated in this receipt, which embodied the results arrived at in this interview.

There is not a syllable in the plaintiff's direct testimony as to any agreement to sever the balance of the purchase money, or to pay the plaintiff his share thereof when it became due. That was evidently taken for granted as the supposed legal result of the then present agreement with respect to the notes and the extension. On cross-examination, however, after repeated urgings to state all that occurred at the interview, the plaintiff did say that he objected to signing the extension "unless my share  *  *  * was paid to me direct, and that the balance should be paid to me direct." These last-quoted words constitute the only evidence in the case of the verbal agreement, upon which alone the judgment can rest. The remarkable omission of any reference to this agree-- ment on the direct examination necessarily tends to discredit the casual statement thus made on the cross-examination. This omission can only be explained on the theory that both the plaintiff and his counsel believed that the former became vested, as an equitable assignee under Charles R. Johnson's contract with him, with a direct cause of action against the defendant, and that this cause of action required no verbal agreement on the defendant's part to sustain it. They consequently sought no such verbal agreement. The complaint describes Charles R. Johnson's contract with the plaintiff as "a written assignment" by the former of his claim for the purchase price of the stock furnished by the plaintiff; and prior to the interview of July 7, 1894, the plaintiff had made written demands upon the defendant for direct payment, apparently under the advice of counsel. The probative force of the plaintiff's testimony is thus diminished by this evident belief on his part, at the time of the interview, that he had a claim against the defendant, founded upon a writing. In his view, his rights were already in existence, and this naturally made him unobservant as to whether the defendant actually and affirmatively agreed to do that which he thoroughly believed they were already bound to do. Finally, this testimony of the plaintiff, in itself a mere incidental observation of doubtful sufficiency, is contradicted by the other three persons present at the interview,—Miller, Hall, the defendant's president, and Gilmore, its treasurer. Gilmore and Miller flatly deny that the plaintiff refused to sign the extension agreement unless the future payment should be made to him direct; and Hall says he has no recollection that the plaintiff said he should expect such payment, and that, at all events, no such agreement was made with him. And these witnesses did not have the same direct, personal interest in the result of the action as did the plaintiff.

Taking into consideration the plaintiff's direct interest; his failure to testify to this agreement on his direct examination; the casual and inconclusive nature of the single observation which he made on cross-examination, and which alone even tends to support

his claim; his evident belief that the defendant was bound without any such agreement; the entire absence of any such agreement in the receipt, in which it would naturally have been embodied if made; and the explicit contradiction of the plaintiff's testimony by three less interested witnesses,—it is impossible to hold that he made out his case by a fair preponderance of evidence. A written contract, under seal, between two contracting parties, cannot well be modified by mere implication, or what the respondent here calls a "tacit understanding," so as to sever the obligation, and require part payment to a stranger to the instrument. Such a rearrangement of the original contract relations can only be established by adequate proof of a substituted contract; and that, here, is clearly wanting.

The judgment and order should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and INGRAHAM, J., concur.

RUMSEY, J. (dissenting). On the 7th of July, 1892, Charles R. Johnson made an agreement with the defendant to sell to it 730 shares of the stock of the Johnson Railroad Signal Company, for $110,000, to be paid as more particularly stated in the contract. At the same time, Charles R. Johnson made a contract with the plaintiff, in which, after reciting the contract made with the Hall Signal Company and the fact that Henry Johnson furnished 166 of the 730 shares which were sold to the defendant, it was recited that Henry Johnson was interested in the contract, and to be paid, out of the proceeds thereof, $166/650$ thereof, after certain deductions. Of this contract the defendant had notice as soon as May, 1894. Certain payments were made upon the contract as they became due. On the 7th of July, 1894, a payment was due which the defendant desired to extend. After the making of that payment, there would still remain due upon the contract the sum of about $25,000, of which sum the defendant also wished to obtain an extension for one year. A meeting was had between the representative of the estate of Charles R. Johnson, he being then dead, and the plaintiff, on the one hand, and the representative of the defendant, on the other. It was agreed between all parties that there should be given, for the payment then due to Charles R. Johnson's estate, notes for the amount belonging to it, and to the plaintiff notes for the share which was coming to him pursuant to his contract with Charles R. Johnson. There was conversation also with regard to the extension of time of the other payment, and it seems to be conceded that an extension was then agreed upon. After the time for that extension had expired, the plaintiff demanded of the Hall Signal Company payment to him of what he insisted was his share of the portion still due under the contract between the defendant and Charles R. Johnson, and, upon that demand being refused, he brought this action. At the trial he recovered the amount which he claimed to be due to him. A motion for a new trial was made upon the judge's minutes, which was denied;

and thereupon, from the judgment entered upon the verdict, and from the order denying a new trial, this appeal is taken.

The plaintiff claims, in the first place, that the contract between himself and Charles R. Johnson, by which it was recited that he was to receive a certain portion of the proceeds of the purchase price of the 730 shares, operated as an assignment to him of that proportion of the money which the defendant agreed to pay to Charles R. Johnson for those shares. With this contention, how-ever, we do not agree. But as the plaintiff's judgment can be sustained upon another ground, upon which it was put at the trial term, we will not further consider that point.

It is conceded that at the time when the notes were given, and the time of payment of the last installment was extended for one year, the plaintiff and the representative of Charles R. Johnson and the officer of the defendant were present, for the express purpose of agreeing upon the manner and time of payment of what was still due upon the contract. It was known to the defendant at that time that the plaintiff had an interest in the proceeds to be received by Charles R. Johnson's estate, and that that estate was under a contract to pay that proportion of the proceeds to him. That being the situation, an application was made by the defendant to the agent of Charles R. Johnson to be permitted to give notes for the payment then due. The whole matter was the subject of discussion between the persons there present, including the plaintiff, and the giving of the notes was agreed upon, and the amount coming to the plaintiff was set apart, and notes given especially to him for that amount. The defendant also desired an extension of one year in which to pay the unpaid portion of the purchase price. All these things are conceded. The plaintiff says that, when the matter of the taking of the notes and extending the time was under discussion, he was asked to sign a receipt for the amount then to be paid, and that to that request he made the following reply: "I objected to signing the paper unless my pro rata share was paid to me direct, and the balance should be paid to me direct." He said that, after he had made that statement, Mr. Hall, representing the defendant, turned to Mr. Miller, and asked if he objected to that, to which Mr. Miller, who represented the estate of Charles R. Johnson, said, "No;" and then Mr. Hall and Mr. Miller made a calculation as to how the thing was to be divided up, and new notes were made. That any such demand was made by the plaintiff was denied by Mr. Hall, and by Mr. Miller, the representative of the estate of Charles R. Johnson; and the question was submitted to the jury whether the plaintiff insisted, as a condition of taking the notes, that his share of the balance of the contract price was to be paid to him direct; and the jury were told that he made that condition, and if, after that condition had been imposed, the notes were made and accepted by him, as he insisted, they would have a right to infer from that that the defendant and the representative of Charles R. Johnson also assented to the other condition imposed by him, that the remainder of the contract price should be paid to him direct, and from

that to infer an agreement to that effect. Whether this instruction was correct, and whether, if there was any such condition assented to even tacitly by the defendant, it reached the dignity of a contract upon which an action could be maintained, are the questions presented by this appeal.

Of course, to make a contract between two persons, it is necessary that there should be a meeting of their minds upon the terms of it, and that the offer made by one party should be accepted, as it was made, by the other. Unless those facts shall have been established in any case, no contract has been proven; but an acceptance of an offer need not be in express words, nor need it be in words at all. If a proposition to do an act is made, coupled with a condition upon which the act will be done, and the person to whom the proposition is made permits the act to be done, and receives the benefit of it, he is deemed also to have accepted the condition which was a part of the proposition, and he will not be at liberty to say, after he has received the benefit of the offer, that he was not bound by the condition to which he did not object when the offer was made to him. This principle runs through all the works upon Contracts, and it is recognized and established in the case of Fuller v. Kemp, 138 N. Y. 231, 33 N. E. 1034. In that case the plaintiff made a demand against the defendant for the amount due him for services. The amount was unliquidated, and was disputed by the defendant. The plaintiff sent a bill to the defendant for the amount which he claimed was due to him. After the bill had been received, the defendant expressed his surprise at it, and there was some discussion between the parties as to the correctness of the amount. The defendant finally wrote to the plaintiff, saying that he did not acknowledge that the sum claimed was due, but he did acknowledge that the services rendered were worth a certain amount, for which he inclosed a check, saying that it was in full satisfaction of the plaintiff's claim against him for services to that date. The plaintiff retained the check for some time, but finally brought an action for the recovery of the remainder of the sum which he claimed to be due, acknowledging the receipt of the smaller sum contained in the check, as a payment on account only. The defendant claimed that the receipt of the smaller amount, upon the conditions upon which it was tendered, operated as an accord and satisfaction; and that was the question presented to the court. It will be understood, of course, that an accord and satisfaction is simply an agreement to receive a certain sum in full payment of an unliquidated demand for a larger sum, and the agreement is to be implied from the conduct of the parties; and in this case it was to be implied, if at all, from the fact that the offer to pay the smaller sum was coupled with the condition that it should be received in full satisfaction. The court held that the transaction operated as an accord and satisfaction; saying that the acceptance of the money involved the acceptance of the condition, and the law would not permit any other inference to be drawn from the transaction. Under such circumstances, the assent to the terms proposed would be implied, and no words of pro-

test could affect the legal quality of the act. The principle laid down in that case is clearly applicable to the case at bar, and if the jury found, as they might, that the plaintiff, in agreeing to accept the notes, and thus extend the time for his portion of the payment then due, coupled with it a condition that his share of the amount still to become due should be paid direct to him, they might properly infer from the giving of the notes by the defendant that it accepted the condition upon which the plaintiff agreed to take those notes.

But it is said the agreement was invalid, because there was not a sufficient consideration for it. In examining this question, it must not be forgotten that the jury have found that there was an agreement by which, when Charles R. Johnson extended the time of payment of the two last installments, the defendant gave notes to the plaintiff for his share of the first installment, and agreed to pay him his portion of the second when the time to which it was extended should have expired. That this agreement was a valid one, if there was a consideration, cannot be denied. It is hardly necessary to say that any benefit to the promisor is a sufficient consideration to sustain a contract. If there is in fact a benefit to the promisor for the promise which he makes, it is a matter of no importance whether that consideration shall be valid or not. Being adequate, it is sufficient. Referring to the situation of the parties, it is to be seen that, when they were together negotiating as to the terms upon which the extension should be made, it was known to all of them that Charles Johnson's estate was under an obligation to pay to Henry Johnson, the plaintiff, a certain portion of the money which that estate should receive from the defendant. The promise to the defendant to extend the time of payment was a sufficient consideration for any promise which the defendant might see fit to make. That everybody concedes. The jury have found that, as the result of the transaction, the defendant did tacitly make a promise to the plaintiff to pay him his share of the consideration which he had a right to receive from Charles R. Johnson. It is not necessary that the person to whom this promise was made (the plaintiff here) should have any privity with the defendant, in order to make the promise a valid one, and one upon which the plaintiff could maintain his action. In the case of Lawrence v. Fox, 20 N. Y. 268, the situation was precisely that here presented. Holly had loaned to the defendant a certain sum of money, stating that he owed that sum to the plaintiff, and had agreed to pay it to him the next day; and the defendant, in consideration of the loan to him, at the time of receiving the money, promised to pay it to the plaintiff the next day. In an action brought upon that promise, the rule was laid down that an action lies on a promise made by the defendant upon a valid consideration to a third person for the benefit of the plaintiff, though the plaintiff was not a privy to the consideration. That case has been followed consistently from the time when it was decided until the present, and it is so precisely on all fours with the case at bar that it precludes the necessity of further examination. That the

extension of time was a sufficient consideration cannot be disputed. It was just as much a consideration as though the money had been advanced to the defendant on the very day when the bargain was made, and the defendant, as a consideration for receiving the money, had promised to pay it over to the plaintiff when it should become due. The only difference is that in this case the consideration for the promise of the defendant was, not the receipt of the money, but the extension of the time of its payment, which was equally sufficient as a consideration. As was the case in Lawrence v. Fox, the plaintiff here had a legal claim against Charles R. Johnson, which would be satisfied by the payment of the money by defendant to plaintiff; but what renders the present case stronger than that of Lawrence v. Fox is that it was conceded on all hands here that the plaintiff had not only a legal claim against Charles R. Johnson, but an equitable right to the proceeds of the very money which the defendant was to pay to Charles R. Johnson, although not such a right as he could enforce in an action at law against the defendant, except for this contract which the defendant made. For this reason, we think that the contract was a valid one, and the plaintiff, having proved it, could recover upon it. The objection that the contract was not valid under the statute of frauds, for other reasons than that just considered, need not be discussed.

It is objected, however, that Charles R. Johnson was a necessary party to the action, and should have been joined; and that objection is raised by the answer. But, if Charles R. Johnson was a necessary party, that fact was clearly made to appear upon the face of the complaint, and should have been taken by demurrer. Not having been thus taken, the objection must be deemed to be waived. Code Civ. Proc. §§ 488, 498, 499; Stelling v. Grabowsky (Sup.) 19 N. Y. Supp. 280.

The judgment and order should be affirmed, with costs.

O'BRIEN, J., concurs.