HENRY MESLOH, Plaintiff, *v.* HERMAN SCHULTE, Doing Business under the Trade Name and Style of LIC SPA CONFECTIONERY, Defendant.*

Municipal Court of New York, Borough of Queens, First District, May 21, 1934.

*Thomas J. Diviney*, for the plaintiff.

*Leon Berg*, for the defendant.

O'ROURKE, J.   The attorneys for the respective parties, to whom the greatest credit is due for their careful research herein, have requested me to write an opinion in this matter involving the contractual rights of an employer and employee under the President's Re-employment Agreement.   A careful search of the published records reports, so far as I am able to find, no legal opinions.

The testimony taken at the trial revealed that the plaintiff had been in the employ of the defendant for several years as a candy and ice cream maker at a weekly salary of twenty-five dollars a week; that on or about September 1, 1933, the defendant signed the so-called certificate of compliance; that the plaintiff was discharged on or about January 6, 1934; that he never requested nor did any one speak to the plaintiff in reference to

---

* See, also, *Canton* v. *Palms, Inc.* (152 Misc. 347).

either an increase in wages or a shortening of the hours of employment between September 1, 1933, and the date of discharge.

There is a question as to whether or not the defendant signed the President's Re-employment Agreement. But it is undisputed that he signed the so-called certificate of compliance above referred to which reads as follows: " I/we certify that we have adjusted the hours of labor and the wages of our employees to accord with the President's Re-Employment Agreement which we have signed."

The defendant further testified that he filed this certificate with the Post Office Department, and that he received the " Blue Eagle " insigne of the NRA. This insigne he posted in the window of his store.

The plaintiff now brings this action to recover wages for the overtime hours, i. e., the hours he worked each week over and above the maximum number of hours of weekly employment for those in his industry as prescribed by the blanket code and amendments thereto.

The defendant counterclaimed for $735 for meals consumed by the plaintiff. The counterclaim was dismissed at the close of the trial for lack of proof.

The questions of fact having been determined by the court in favor of the plaintiff, the next thing to be decided is whether or not the plaintiff has an action at law, and if so what should be his recovery?

On June 16, 1933, the Congress of the United States passed the National Industrial Recovery Act. It was by the provisions of the act " declared to be the policy of Congress to remove obstructions to the free flow of interstate and foreign commerce which tend to diminish the amount thereof; and to provide for the general welfare by promoting the organization of industry for the purpose of cooperative action among trade groups, to induce and maintain united action of labor and management under adequate governmental sanctions and supervision, to eliminate unfair competitive practices, to promote the fullest possible utilization of the present productive capacity of industries, to avoid undue restriction of production (except as may be temporarily required), to increase the consumption of industrial and agricultural products by increasing purchasing power, to reduce and relieve unemployment, to improve standards of labor, and otherwise to rehabilitate industry and to conserve natural resources." (U. S. Code [Compact ed.], Special pamphlet, July, 1933, p. 5.)

Section 4 (a) of title I of the National Industrial Recovery Act provides as follows: " The President is authorized to enter into agreements with, and to approve voluntary agreements between

and among, persons engaged in a trade or industry, labor organizations, and trade or industrial organizations, associations, or groups, relating to any trade or industry, if in his judgment such agreements will aid in effectuating the policy of this title with respect to transactions in or affecting interstate or foreign commerce and will be consistent with the requirements of clause (2) of subsection (a) of section 3 for a code of fair competition." (U. S. Code [Compact ed.], Special pamphlet, July, 1933, p. 7.)

Thereafter, and on or about July 27, 1933, an agreement was offered by the President to all persons engaged in a trade or industry providing, among other things, for minimum wages and maximum hours of employment for all employees. This agreement is what is commonly known as the President's Re-employment Agreement, and is sometimes referred to as the blanket code. The parts of the agreement with which we are especially concerned read as follows:

"(2) Not to work any accounting, clerical, banking office, service or sales employees (except outside salesmen) in any store, office, department, establishment, or public utility, or on any automotive or horse drawn passenger, express, delivery, or freight service, or in any other place or manner, for more than 40 hours in any one week."

"(7) Not to reduce the compensation for employment now in excess of the minimum wages hereby agreed to (notwithstanding that the hours worked in such employment may be hereby reduced) and to increase the pay for such employment by an equitable re-adjustment of all pay schedules."

Thereafter certain changes were made in the agreement in so far as it affects the hours of employment in various industries. The blanket provision regarding working hours as affecting the retail confectionery business was changed as expressed in paragraph 2 of the agreement hereinbefore mentioned to read as follows: " Employees other than factory, mechanical workers or artisans (except outside salesmen) may not be employed in any place, or manner for more than 48 hours in any one week, averaged over a 12 months period; nor more than 8 hours in any day; provided, however, that during peak periods of the retail confectioners industry such employees may be employed not more than ten hours per day, nor more than 54 hours per week for any 2 consecutive weeks, but for not more than 6 weeks of the calendar year. Time and one-third shall be paid for hours worked in excess of the maximum hours per day hereinbefore provided."

I find and decide that the defendant by his acts and admissions signed the President's Re-employment Agreement and that he is

bound by its provisions. Obviously the President's Re-employment Agreement is a contract between an individual and the State for the benefit of third parties, *i. e.*, employees. The rule has been long established that a plaintiff may recover under certain circumstances upon a contract between the defendant and a third party for the benefit of the plaintiff. (*Lawrence* v. *Fox*, 20 N. Y. 268.) Subsequently the rule was more clearly defined in the action of *Seaver* v. *Ransom* (224 N. Y. 233). In his opinion in that case Judge POUND states: " The right of the third party is also upheld in * * * the public contract cases * * * where the municipality seeks to protect its inhabitants by covenants for their benefit."

Supporting the policy thus laid down in that case, the following decisions were cited: *Little* v. *Banks* (85 N. Y. 258); *Pond* v. *New Rochelle Water Co.* (183 id. 330); *Smyth* v. *City of New York* (203 id. 106); *Farnsworth* v. *Boro Oil & Gas Co.* (216 id. 40); *Rigney* v. *New York Central & H. R. R. R. Co.* (217 id. 31); *Matter of International R. R. Co.* v. *Rann* (224 id. 83).

It was to his, the employer's, benefit to sign the President's Re-employment Agreement for the many reasons set out at length in the National Industrial Recovery Act, but particularly for the purpose of eliminating " unfair conpetitive practices," increasing purchasing power and thereby increasing sales, raising prices, etc. Having made the agreement in return for a consideration to himself, and having displayed the NRA insignia in conformity with the NRA plan, he held himself out as one who had made a contract with the President for certain specified purposes.

A reading of the contract and particularly of the provisions above set forth indicates clearly that it was intended as a definite protection and aid to all employers as well as employees. It was for mutual benefits.

The plaintiff claims overtime of twelve hours a week; *i. e.*, six days a week at ten hours a day against a forty-eight-hour week as provided in the amendment to the retail confectioners' code. I have found as a matter of fact that the plaintiff worked from eight A. M. to six P. M. with one hour off for meals, or nine hours a day, six hours overtime a week for a period of eighteen weeks. This same amendment provides for time and one-third for overtime. However, the interpretation of the President's Re-employment Agreement with specific reference to paragraph 7 has been called to my attention in the National Recovery Administration Bulletin No. 4: " There is no fixed rule which can be applied to determine what is an equitable readjustment. In general, it will be equitable to figure what the employee would have earned at his previous

rate per hour in a normal week in the industry, and then to increase the hourly rate so as to give him substantially the same compensation as he would have gotten for that normal week. But consideration must be given to other factors, including: Is the existing rate high or low compared with the average rate paid in the industry? Will the resulting adjustment result in an unfair competitive advantage to other employers or other trades or industries? Will a long standing wage differential be lost if there is no increase in the existing rate? "

In view of the above, I shall allow a recovery on the basis of a fifty-four-hour week at twenty-five dollars or sixty-one and six tenths cents per hour, on one hundred and eight hours, less fifteen hours which it was conceded should be deducted for certain intervening holidays, or fifty-seven dollars and twenty-nine cents.

I hereby find and decide that the plaintiff is entitled to judgment against the defendant in the sum of fifty-seven dollars and twenty-nine cents. Ten days' stay.