MICHAEL CANTON and Another, Plaintiffs, *v.* THE PALMS, INC., and Another, Defendants.*

City Court of Buffalo, Erie County, July 17, 1934.

*Louis N. Blatt*, for the plaintiffs.

*David D. Nash*, for the defendants.

* See, also, *Mesloh* v. *Schulte*, 151 Misc. 750.

KEELER, J. The plaintiffs herein were employed by the defendants as kitchen help in the defendants' restaurant.

The plaintiff Michael Canton was employed from September 25, 1933, to March 10, 1934, during which time he worked ten hours per day, six days per week, and received as wages a total of $243.62. He seeks to recover a balance of $109.18.

The plaintiff Edward Zarem was employed from November 9, 1933, to March 10, 1934, during which time he worked nine hours per day, six days per week, and received as wages a total of $204. He seeks to recover a balance of $53.04.

The claims of the plaintiffs are based upon the minimum hourly rate of pay provided for in the " Restaurant Industry Basic Code."

Plaintiffs' rights to the benefits of the " Restaurant Industry Basic Code " are founded in and grow out of the " President's Re-employment Agreement," which was signed by the defendants August 22, 1933.

Paragraph 13 thereof reads as follows: " This agreement shall cease upon approval by the President of a code to which the undersigned is subject; or, *if the N. R. A. so elects, upon submission of a code to which the undersigned is subject* [italics mine] and substitution of any of its provisions for any of the terms of this agreement." Such a code, known as the " Restaurant Industry Basic Code," was submitted by the National Restaurant Association and approved by the N. R. A. August 10, 1933. It can scarcely be questioned that by " approving " this basic code, the N. R. A. did " so elect." The provisions thereof became controlling and remained so until February 26, 1934, the date the " Code of Fair Competition for the Restaurant Industry " went into effect.

Article IV, section VI, of the Basic Code provides a minimum hourly wage of twenty-eight cents in cities of over 500,000 population. The court takes judicial notice of the fact that Buffalo, N. Y., is a city of over 500,000 population. The defendants, therefore, were required to pay the plaintiffs at the rate of twenty-eight cents per hour, until February 26, 1934. Since the record discloses no proof of any change in this rate by agreement of the parties, or any act of the defendants, this rate continued in force during the remaining twelve days of the plaintiffs' employment.

Article IV, section VIII, provides that " the minimum rates and wages established in section VI shall not be subject to deduction for meals furnished employees, unless such was the practice in the restaurant prior to June 16, 1933."

Since the defendants were not in business prior to June 16, 1933, it follows that the " unless " or exception provision does not apply in this case. The question whether or not they received

meals during the course of their employment has, therefore, no bearing on the amount due them.

It now becomes necessary to determine whether the plaintiffs can avail themselves of and maintain an action to enforce the provisions of " The President's Re-employment Agreement."

The general principles decisive of this question were first laid down in this State by the great case of *Lawrence* v. *Fox* (20 N. Y. 268). (It may be interesting to note that this case, decided in 1859, arose in the Superior Court of Buffalo.) This case decided that a contract may be enforced by a third party, where it was made for his benefit, although the third party was not privy thereto.

Let us now examine the contract, " The President's Re-employment Agreement," to determine whether it was made for the benefit of the plaintiffs. At the head of the " agreement," which is in evidence, are these words:

" To Every Employer: 1. This agreement is part of a nation-wide plan to *raise wages, create employment* [the italics are mine] and thus increase purchasing power and restore business. * * * Franklin D. Roosevelt."

The body of the agreement contains numerous provisions binding upon the employer and for the benefit of the employee, such as the following: " not to work any * * * employees * * * for more than 40 hours in any 1 week and not to reduce the hours of any store or service operation to below 52 hours in any 1 week."

" Not to employ any factory or mechanical worker or artisan more than a maximum week of 35 hours."

" Not to pay any of the classes of employees mentioned in paragraph (2) less than $15.00 per week."

" Not to pay any employee of the classes mentioned in paragraph (3) less than 40 cents per hour."

" Not to reduce the compensation for employment now in excess of the minimum wages hereby agreed to (notwithstanding that the hours worked in such employment may be hereby reduced) and to increase the pay for such employment by an equitable readjustment of all pay schedules."

" Not to use any subterfuge to frustrate the spirit and intent of this agreement which is, among other things, to increase employment by a universal covenant, to remove obstructions to commerce, and to shorten hours and to raise wages for the shorter week to a living basis."

In view of these provisions of the " agreement," it seems to me that it would be violating the canons of sound reasoning, and catering to the quibbles of sophistry, to question that this " agreement " or contract was made for and intended for the benefit

of these plaintiffs, as well as for that of the millions of other employees engaged in the great business and industrial life of this country.

While some of the earlier decisions may appear to have limited the application of the *Lawrence* v. *Fox* rule, the late cases have broadened its scope and increased its effect. In *Seaver* v. *Ransom* (224 N. Y. 233), POUND, J., says: " KELLOGG, P. J., writing for the court below well said: ' The doctrine of *Lawrence* v. *Fox* is progressive, not retrograde. The course of the late decisions is to enlarge, not to limit the effect of that case.' The court in that leading case attempted to adopt the general doctrine that any third person, for whose direct benefit a contract was intended, could sue on it."

In *Strong* v. *American Fence Construction Co.* (245 N. Y. 48, [1927]) Judge CARDOZO, then chief judge of the New York Court of Appeals, says: " A beneficiary of the promise, a laborer or materialman, for whose protection it was given, has a right of action for the damages resulting from the breach," and cites *Lawrence* v. *Fox* and *Seaver* v. *Ransom*.

Again quoting from *Seaver* v. *Ransom* (*supra*): " The right of the beneficiary to sue on a contract made expressly for his benefit has been fully recognized in many American jurisdictions, either by judicial decision or by legislation, and is said to be ' the prevailing rule in this country ' * * * It has been said that ' the establishment of this doctrine has been gradual, and is a victory of practical utility over theory, of equity over technical subtlety.' "

While the English rule that privity between plaintiff and defendant is necessary, and that because a contract cannot be enforced against a third party, it, therefore, cannot be enforced by him, is still adhered to by the courts of Massachusetts, this court feels that the doctrine of *Lawrence* v. *Fox* is controlling in this case.

The plaintiffs are, therefore, entitled to judgment against the defendants for the amounts demanded.