OPINION OF THE COURT
David Otis Fuller, Jr., J.
The plaintiffs seek reimbursement for additional expenses *269 they claim to have incurred in connection with a mortgage commitment because the defendant did not have flood insurance. A trial of this small claims action was held on November 2, 1989. Both sides later submitted supplementary material.
By contract dated April 5, 1989, the plaintiffs agreed to purchase one of the condominium units governed by the defendant, a condominium in Tuckahoe. To finance their prospective purchase, the plaintiffs obtained a mortgage commitment at 10% interest with no commitment fee from Peoples Westchester Savings Bank. The bank, however, refused to close on the mortgage because the property was located in a Federally designated flood hazard area for which flood insurance was required. The defendant carried no such insurance.
On July 14, 1989, the plaintiffs were notified by the defendant’s insurance broker that the condominium was now covered by flood insurance. The plaintiffs went back to the bank and, upon payment of a $75 fee to update the original appraisal, received another mortgage commitment at a rate of 10.25% interest with a $1,626 commitment fee.
Prior to hearing about defendant’s obtaining the flood insurance, the plaintiffs had paid $305 to another bank to apply for a mortgage there but were refused. They claim that, had it not been for the defendant’s failure to have the flood insurance when they first obtained a commitment, they would not have paid $305 to apply for another mortgage, $75 to update their appraisal and $1,626 for a commitment fee. Their claim is, thus, for $2,006 which must be reduced to $2,000, the jurisdictional limit of this court for small claims.*
There is no question but that had the defendant carried flood insurance, the plaintiffs would not have incurred these additional expenses. The only question is whether the defendant should be held liable to the plaintiffs for not having had the insurance.
The plaintiffs have submitted pertinent parts of the offering plan for the condominium showing that the bylaws of the defendant require, to the extent obtainable, that it maintain, among other coverage, water damage legal liability insurance and multiperil coverage. The defendant states that it had water damage legal liability insurance at the time in question. *270 Such insurance would not have helped the plaintiffs because it does not include flood coverage. (Insurance Law § 1113 [a] [6].)
The next question is what is meant by "multiperil” coverage, particularly in view of the fact that the condominium is located in a Federally designated flood hazard area. There is no statutory definition of "multiperil”. And it has not been judicially construed. This court, then, must decide what "multiperil” means.
"Multi” carries with it the idea of covering many perils. And it is clear that flood can bé a peril. The meaning of "peril,” though will vary depending on where the condominium is located. Management, for instance, would not be expected to consider flood a peril if the property were located on the hills of Tuckahoe instead of in a Federally designated flood hazard area near an expanse in the Bronx River. Nor would earthquakes or hurricanes be considered perils in Tuckahoe the way they would be in San Francisco or Charleston.
Defense counsel has submitted material from an insurance agency stating that its special multiperil and commercial package policies do not include flood insurance. What an agency offers, while to be considered, is not determinative of what the term "multiperil” means in the defendant’s bylaws. Moreover, the defendant’s material also states that "[m]any other options and endorsements allowed the [special multiperil] to be tailor made for each policyholder.”
The condominium association is the "traditional logical entity” to purchase flood insurance. (54 Fed Reg 29686 [July 13, 1989].) Although the question is not free from doubt, this court holds that when the bylaws of a condominium which is located in a Federally designated flood hazard area require "multiperil” coverage, flood is one of the perils falling within the multiperil definition. By not having flood insurance, which was obtainable, the defendant was not in compliance with its bylaws.
Both the unit owners here, sellers to the plaintiffs and promisees of the defendant to comply with its bylaws, and the defendant itself can be deemed to have intended that prospective purchasers of a unit under a written contract of sale would also be beneficiaries of compliance by the defendant with its bylaws. (See, Lawrence v Fox, 20 NY 268 [1859].) They would have intended this because adherence to the bylaws is a positive factor in the marketability of the units. Such purchasers are easily identified, have privity with the unit owners *271 through the written contract of sale and in that contract have made their purchase of the unit subject to the bylaws, thereby committing to accept the benefits and obligations that they entail.
Although the principal purpose of the bylaws requiring this insurance is protection against casualty loss, it is reasonably foreseeable by the condominium management that adherence to this and other bylaws might be relied on in applying for financing of the units. (See, 54 Fed Reg, at 29686-29687.)
Thus, by failing to carry the insurance required by its bylaws, the condominium was in breach of contract to the plaintiffs purchasers as third-party beneficiaries and liable to them for the damages suffered as a result.
The plaintiffs have also claimed that the defendant was required to carry flood insurance under Federal and State law and is liable to them on that basis as well. It is unnecessary to reach that question in view of the conclusion reached above.
Judgment for the plaintiffs in the amount of $2,000.

 They might also have claimed for the additional one-quarter point in the interest rate were it not for the jurisdictional limit.